269 So.2d 659 (1972)
DEPARTMENT OF ADMINISTRATION et al., Appellants,
v.
Mallory E. HORNE et al., Appellees.
No. 41860.
Supreme Court of Florida.
November 22, 1972.
Robert L. Shevin, Atty. Gen., and Daniel S. Dearing, Chief Trial Counsel, Tallahassee, for appellants.
Mallory E. Horne, Tallahassee, Frederick B. Karl, Daytona Beach, and Edward S. Jaffry, Lakeland, for appellees.
DEKLE, Justice.
This is an interlocutory appeal from Leon County Circuit Court, directly appealable because any final decree of the chancellor herein will of necessity pass directly upon the validity of a state statute. Fla. Const. art. V, § 4(2), F.S.A.; F.A.R. 4.2, 32 F.S.A.; Cramp v. Board of Public Instruction of Orange County, 118 So.2d 541 (Fla. 1960); and Odham v. Foremost Dairies, Inc., 128 So.2d 586 (Fla. 1961).
Appellees as plaintiffs below asserted that certain sections of the 1971 General Appropriations Act (Ch. 71-357, Laws of Florida 1971) are in violation of the Fla. *660 Const., 1968; they seek declaratory judgment against the various state agencies named as defendants (appellants here) and to enjoin the Comptroller from disbursing state funds authorized by these various "unconstitutional" provisions in the General Appropriations Act.
Fifty-five sections of the Act are attacked and all of them on the following three bases:
(1) It is an attempt to enact substantive law in an appropriations act in violation of Fla. Const. art. III, § 12, and earlier authorities of this Court.[1]
(2) The subject matter is not included in the Act's title, in contravention of Fla. Const. art. III, § 6.
(3) It constitutes "logrolling" which circumvents or curtails the Governor's veto power in violation of Fla. Const. art. III, §§ 8 and 12.
The able chancellor denied the motion to dismiss for failure to state a cause of action and for plaintiffs' not having standing to sue and the motion's further ground that there was not a justiciable controversy qualifying the complaint for declaratory judgment under the statute. This interlocutory appeal followed.
"Standing to sue" is the primary question here for our determination; answer to the further question as to whether the allegations meet the requirements for a declaratory judgment will generally follow that determination.
Appellees sue as "ordinary citizens and taxpayers"  not in their official and well-known roles as eminent members of The Florida Senate. It is our view that the determination of this matter should turn foursquare upon that very position; we believe that members of that august body would agree that they should not as legislators have "a second shot" before the judiciary on legislative decisions, having first "missed" in their legislative forum. It is therefore the taxpayer who is to be considered here as having a standing to sue or not.
Appellees cite Florida and sister state authorities allowing taxpayer attacks upon "unlawful expenditures."[2] Appellants accept these authorities insofar as efforts to stop actual expenditures or levying of a tax is concerned but would distinguish "expenditure" and "appropriation" (as in the General Appropriations Act) which appellants see as only a "cutting of the pie" and not at all as "eating" it by the ultimate expenditure of funds. This seems to be a "distinction without a difference." We do not view the matter as turning upon whether or not it constitutes a direct "expenditure." We understand the distinction that the actual expenditure will not take place until the particular agency shall act upon it. That naturally follows, however, unless the agency chooses not to make the expenditure (a rather rare occurrence) or unless the money runs out  or unless a taxpayer stops it as illegal, the appellees' purpose here. If a taxpayer does not launch an assault, it is not likely that there will be an attack from any other source, because the agency involved is usually in accord with the expenditure. There may be instances in which the affected public official might pursue the matter.[3] The Attorney General would be an appropriate officer to bring such a suit, but in some instances this is not done and it is in such *661 cases that it is only the taxpayer's attack which preserves the public treasure.
An "expenditure" is not made sacrosanct by the fact that it is placed in the General Appropriations Act. Once an appropriation is made, the expenditure follows administratively as a matter of due course  or at least in the usual case it does. The cited cases (footnote 2) would justify an attack on an improper "expenditure" which has been appropriated if the attack is otherwise well founded.
If we should immunize from attack the same provision hidden in a General Appropriations Act, then there would be no avenue of relief even if it were illegal, should the appropriate public officials choose not to sue.
It is recognized that reasonable and related conditions upon the same subject may be placed upon expenditures in an appropriations bill. Some of the appropriations here attacked may be in this category while others warrant review. The provisions are not before us on the merits but by way of illustration we note several of the challenged sections of the appropriations act which are questioned:
Section 1, Item 339, is as follows:
"Provided, however, it is the intent of the legislature that the division of motor pool shall activate a central motor vehicle pool and maintenance district II only by transferring positions, equipment and facilities in accordance with the plan of operations presented in the 1971-72 legislative budget request. Trust fund appropriations provide for 53 authorized current positions to be transferred from other Departments."
Section 1, Item 757, contains the following language:
"Provided, however, that in the activities of resource development and production pertaining to regulation and control of offshore oil and gas production funding will be provided only by raising drilling fee $50 and capping fee $35."
Section 13 contains the following language:
"The division of youth services of the department of health and rehabilitative services is hereby authorized to assume full responsibility for the operation of the juvenile detention home (Youth Hall) and the Kendall and Parkway Training Schools of Dade County, or any one or combination of these, as a pilot project to test the feasibility of state-operated detention and treatment facilities; provided, however, that the Metropolitan Dade County Commissioners shall:
"(1) complete its fixed capital outlay project to construct a new detention facility to replace the Walter H. Beckham Youth Hall; and ..."
Section 23 contains the following language:
"It is the intent of the legislature that the universities should make all efforts to increase productivity in teaching and place a lesser emphasis on administration and research activities. The productivity factors which resulted in faculty positions in this act are based upon this change of emphasis. Teaching productivity and skills as measured by objective criteria shall be the principal factor in granting tenure or continuing the employment of instructional personnel, and tenure, promotion and continued employment shall not be denied solely for failure to publish."
Section 24 contains the following language:
"The department of general services, division of building construction and maintenance, is hereby authorized to levy and assess the costs of supervision of the construction of every fixed capital outlay project, as owner-representative on behalf of the state, to be transferred to the architects incidental trust fund of said division from appropriate construction *662 funds from time to time, subject to the approval of the department of administration."
Actual modifications of existing statutes or new provisions which are plainly substantive in nature and upon a subject other than appropriations are in violation of Fla. Const. art. III, § 12. Separate provisions impinging upon the expenditures set forth, which involve existing statutes and which should have been enacted as general legislation, are contrary to this constitutional safeguard prohibiting substantive law or additional subjects being enacted by way of an appropriations bill. This prevents such issues from being fairly debated and voted upon separately and, in some instances, avoids the authorized "line veto" of the Governor, thus accomplishing indirectly what could not be done directly.
There could in the guise of "appropriations" be designations inserted in the Act which could actually establish new agencies or projects incidental to the appropriation, if this principle were not strictly adhered to. Without benefit of the required general legislation first establishing such agency or project, such indulgence would deny the vital independent consideration by legislative committees and the general body, as to the validity or need for such agencies. It could also be a subtle approach to government "empire building". In such instances, the evil does not end with the fiscal year which first creates such an agency. Having been established, subsequent appropriations can be granted to it and the agency thereby perpetuated without ever having legitimate birth. Such indirect enactment of law is contrary to our principles of representative government.
All of these are valid reasons for allowing the exception which we hereby approve, limited to constitutional challenges on taxing and spending as earlier indicated.
Appellants point to the basic reasoning behind taxpayer suits in what they refer to as the "Rickman" rule[4] that: (p. 207)
"The principle on which the right [standing to sue] rests is that the taxpayer is necessarily affected and his burdens of taxation increased by any unlawful act of the county commissioners which may increase the burden to be borne by the taxpayers... . The right of the complainant to maintain this suit therefore would seem to depend upon the peculiar injury which may result to him from the expenditure of the funds... . The taxpayer's injury specially induced by the unlawful act is the basis of his equity, and unless it is alleged and proved, there can be no equitable relief."
Essentially, the "Rickman Rule" requires a showing of special injury. We find, however, that the instant case presents a valid exception to the so-called "Rickman Rule." Appellees have alleged the unconstitutionality of certain sections of an appropriations act. These sections are said to be violative of constitutional provisions[5] which place limitations upon enacting legislation regarding state funds. We hold that such allegation in this narrow area satisfies the requirement for "standing" to attack an appropriations act.
We find direct precedent for this exception in Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968). That landmark case deals with a federal taxpayer's "standing" to challenge the validity of a federal spending program. Mrs. Flast and other federal taxpayers brought suit to enjoin the expenditure of federal tax funds under the Elementary and Secondary Education Act of 1965. This Act allocated federal tax funds for religious schools. In essence, their complaint alleged that this 1965 congressional enactment under the federal taxing and spending clause violated the First Amendment's prohibition against any federal law respecting the establishment *663 of a religion. On these facts, the U.S. Supreme Court announced a new federal rule on "standing."
"[A] taxpayer will have standing consistent with Article III to invoke federal judicial power when he alleges that congressional action under the taxing and spending clause is in derogation of those constitutional provisions which operate to restrict the exercise of the taxing and spending power." (392 U.S. 83, 105-106, 88 S.Ct. 1942, 1955)
Applying this rationale, the U.S. Supreme Court said Mrs. Flast had standing to challenge the constitutionality of the 1965 Education Act because the establishment clause imposes a specific limitation upon the federal taxing and spending power. Thus we find that where there is an attack upon constitutional grounds based directly upon the Legislature's taxing and spending power, there is standing to sue without the Rickman requirement of special injury, which will still obtain in other cases.
Sub judice appellees' complaint alleges that 55 sections of the 1971 Appropriations Act violate our constitutional provision contained in Art. III, §§ 6, 8 and 12. These constitutional restrictions specifically limit taxing and spending legislation. Consequently, appellees have "standing" to contest the validity of these 55 sections in the 1971 Appropriations Act on constitutional grounds related solely to the taxing and spending power.
The principal out of state authority supporting appellants' position is Posner v. Rockefeller.[6] The final appeal in two proceedings there ultimately rejected Flast and reaffirmed its own New York rule earlier announced in St. Clair v. Yonkers Raceway, 13 N.Y.2d 72, 76, 242 N.Y.S.2d 43, 44, 192 N.E.2d 15, 16.
We choose to follow the United States Supreme Court (Flast). It would be appropriate in such a taxpayer's suit that, as in other similar instances, the certificate of the Attorney General be provided, setting forth that he elects not to sue, as a predicate to a taxpayer proceeding. This would be in accord with orderly procedure wherein the appropriate public officer usually deals with such matters, rather than the possible multitude of individual citizens who might attempt to act in instances which are many times unwarranted or where such citizens do not have access to appropriate information and procedures involved; otherwise the courts might be subjected unduly to unnecessary and unwarranted litigation on such subjects.
Despite our reluctance to open the door to possible multiple suits by "ordinary citizens", nonetheless, it is the "ordinary citizen" and taxpayer who is ultimately affected and who is sometimes the only champion of the people in an unpopular cause. We would therefore not deny this right of attack by a responsible taxpayer upon allegedly illegal expenditures (appropriations) of public monies, as transcending possible unwarranted litigation that might in some instances ensue.
The protracted litigation in this cause has now consumed the fiscal year involved; accordingly, the substantive matters affected thereupon became moot and dismissal of the proceeding will be appropriate. The principles herein enunciated, however, are justified upon those pleadings before us. The trial court's order denying appellant's motion to dismiss is accordingly
Affirmed.
ROBERTS, C.J., and ERVIN, CARLTON, ADKINS, BOYD and McCAIN, JJ., concur.
NOTES
[1] Dickinson v. Stone, 251 So.2d 268 (Fla. 1971); Lee v. Dowda, 155 Fla. 68, 19 So.2d 570 (1944); Opinion of Justices, 14 Fla. 283 (1872); and Opinion of Justices, 14 Fla. 285 (1872).
[2] McSween v. State, Live Stock Sanitary Board, 97 Fla. 749, 122 So. 239, 125 So. 704 (1929); 65 A.L.R. 508; R.L. Bernardo & Sons, Inc. v. Duncan, 134 So.2d 297 (Fla.App.1st 1961); Robinson's Inc. v. Short, 146 So.2d 108 (Fla.App.1st 1962); Crampton v. Zabriskie, 101 U.S. 601, 25 L.Ed. 1070 (1880); 16 C.J.S. Const.Law §§ 76 & 80; 81 C.J.S. States § 191.
[3] See footnote 1 (Dickinson).
[4] Rickman v. Whitehurst, 73 Fla. 152, 74 So. 205 (1917).
[5] Fla. Const. art. III, § 12; art. III, § 6; and art. III, §§ 8 and 12.
[6] 26 N.Y.2d 970, 311 N.Y.S.2d 15, 259 N.E.2d 484 (1970), and also lower court opinions of this case at 62 Misc.2d 28, 307 N.Y.S.2d 959 (1970), aff'd 33 A.D.2d 314, 307 N.Y.S.2d 957.