303 So.2d 9 (1974)
UNITED STATES STEEL CORPORATION, a Delaware Corporation, Petitioner,
v.
SAVE SAND KEY, INC., a Nonprofit Florida Corporation, Respondent.
No. 44402.
Supreme Court of Florida.
June 12, 1974.
Rehearing Denied December 4, 1974.
Dennis P. Thompson of Richards, Nodine, Gilkey, Fite, Meyer & Thompson, Clearwater and William F. McGowan, Jr., and Thomas A. Clark, of Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, for petitioners.
Tom R. Moore, Clearwater, for respondent.
ROBERTS, Justice.
This cause is before us on certiorari granted to review the decision of the District Court of Appeal, Second District, reported at 281 So.2d 572 (Fla.App. 1973), which directly conflicts with this Court's decision in Sarasota County Anglers Club, Inc. v. Kirk, 200 So.2d 178 (Fla. 1967), thus vesting jurisdiction in this Court. Article V, Section 3(b)(3), Florida Constitution, 1973, F.S.A.
The Attorney General of this State and respondent, Save Sand Key, a non-profit Florida corporation organized for the specific purpose of securing for the public use as much as possible of Sand Key, a gulffront island in Pinellas County owned by petitioner, United States Steel Corporation, filed a complaint for declaratory and injunctive relief against petitioner. In its action, Save Sand Key sought to enjoin *10 United States Steel from interfering with certain alleged rights of the public generally, including individual members of the plaintiff corporation, to use a portion of the soft sand beach area of Sand Key. Such rights to the public use of United States Steel's lands were alleged to have been acquired by the public by prescription, implied dedication and/or general and local custom. Inter alia, respondent alleged that petitioner recently commenced construction of rental and high-rise condominium apartment buildings based upon its development plan for Sand Key, that petitioner has fenced portions of Sand Key around its present construction sites which alleged effectively and substantially prohibits and interferes with the rights of the public to the full use and enjoyment of the tract. Respondent by its complaint sought injunctive relief from any future acts which interfere with, impair or impede the exercise of the public's rights and from an alleged public nuisance in the form of a purpresture blocking enjoyment of those rights.
United States Steel moved to dismiss the complaint as filed by Save Sand Key, Inc. alleging, inter alia, that Save Sand Key had no standing to sue because it did not allege a special injury differing in kind from injury to the general public and because the respondent (plaintiff below) corporation was not itself claiming any right or title to the United States Steel's lands and was therefore not a real party in interest.
Upon consideration of the briefs, the arguments, the statutes and the authorities governing the issue, the trial court determined that Save Sand Key, Inc. lacked standing to bring this lawsuit. In his order dismissing the complaint as to Save Sand Key, Inc., the trial judge explained:
"Paragraph 6 alleges: `Save Sand Key, Inc. is a nonprofit Florida corporation organized for the specific purpose of securing for public use as much as possible of Sand Key ...' The question before the Court is whether a group of people can organize a private nonprofit corporation and seek relief for members of the public in the name of that corporation. This precise question was before the Court in Sarasota County Anglers Club, Inc. v. Burns, [Fla.App.,] 193 So.2d 691 (1st DCA-1967), certiorari denied, [Fla.,] 200 So.2d 178 (1967). In this case, an identical-type corporation was organized and suit was filed against the Board of Trustees of the Internal Improvement Fund and a landowner in Sarasota County. Plaintiffs prayed `for a declaratory decree and injunctive relief ... abating the alleged purpresture and nuisance, and that the land in question be declared to be impressed with a public easement for boating, bathing, navigation, fishing and other public uses ...' (page 692). The appellate court held, on page 693: `The plaintiffs are not in a position to maintain this action.' This case is controlling precedent in Florida as to the question of standing of Save Sand Key, Inc. Further, the Court is persuaded by Florida Rule 1.210, RCP, [30 F.S.A.] that the parties who would be injured would be the proper persons to bring an action upon the facts alleged by Plaintiff Save Sand Key, Inc.; they would be the `real party in interest'."
As indicated by the decision of the District Court of Appeal, Second District, the court refused to dismiss the Attorney General permitting him to pursue the action insofar as it pertains to the alleged public nuisance; however, the Attorney General has taken a voluntary non-suit.
The District Court of Appeal reversed the order of dismissal and specifically stated:
"Necessarily, of course, that must be the holding of the lower court in this case. But we perceive a more profound and complex problem here. The full question to be answered in this case is whether an organization such as appellant which asserts certain vested property *11 rights in the public generally, and thus derivatively in its members individually, can sue to enforce or protect those rights on behalf of those of its members who are personally aggrieved by an intrusion thereon, even though such rights are non-special and are enjoyable in common with every other member of the public."
Sub judice, the District Court explicated:
"We think it's time to say, therefore, that the `special injury' concept serves no valid purpose in the present structure of the law and should no longer be a viable expedient to the disposition of these cases... .
"Summarizing our conclusions, then, we hold first, that a person who is entitled to enjoyment of a right or who directly and personally suffers or is about to suffer an injury may sue for relief or redress whether or not such right or injury is special to him or is shared in common with the public generally. Secondly, we hold that a bona fide non-profit organization may sue for and on behalf of some or all of its members who have been or will be directly and personally aggrieved in some manner relating to and within the scope of the interests represented and advanced by such organization. Finally, we hold, within the rationale of City of Daytona Beach v. Tona-Rama, supra, [now pending in Supreme Court] that facts and circumstances are alleged which, if true, are sufficient to support a finding that there exist enforceable prescriptive rights in the public to the soft sand area of Sand Key."
The District Court also expressly receded from and overruled those portions of Askew v. Hold the Bulkhead  Save Our Bays, 269 So.2d 696 (Fla.App.2d, 1972) which conflicts with its instant decision.
With all due respect, we comment as we did in Hoffman v. Jones, 280 So.2d 431 (Fla. 1973) and Gilliam, et al. v. Stewart, et al., Fla., 291 So.2d 593 opin. filed Jan. 10, 1974, that it is not the province of the District Court of Appeal to recede from decisions of this Court. A much better solution would be to follow the decisions of the Supreme Court and then certify the cause as being one of great public interest in order to facilitate a re-examination of the decision of this Court in question.
We adhere to our decision in Sarasota County Anglers Club, Inc. v. Kirk, supra, wherein, upon certification by the District Court of Appeal, First District, of their decision in Sarasota County Anglers Club v. Burns, 193 So.2d 691 (Fla.App. 1967), we adopted their opinion as the decision of this Court, and, therefore, we reverse the instant decision of the District Court and approve the order of dismissal by the trial court for lack of standing to sue on the part of the appellee.
Sarasota County Anglers Club, Inc. v. Burns, 193 So.2d 691 (Fla.App. 1967), 200 So.2d 178 (Fla. 1967), a suit strikingly similar in nature to the instant cause involved a declaratory judgment action by the Anglers Club, a private non-profit corporation identical in type to respondent corporation acting in behalf of its members, and a private citizen against the Trustees of the Internal Improvement Fund, a landowner and the town of Longboat Key, seeking to enjoin fill operations at Longboat Key to the detriment of the club and others interested in fishing, bathing, and boating in the area, seeking that the land in question be impressed with a public easement for boating, bathing, navigation and other public uses, and praying for a decree declaring the dredge-fill permit to be illegal and void. Finding that the plaintiffs were not in a position to maintain this action, the trial court dismissed the complaint. Upon appeal the District Court of Appeal affirmed the order of dismissal by the trial court and succinctly stated,

*12 "Suffice it to say that we agree with the chancellor in his finding and holding that the plaintiffs are not in a position to maintain this action. [O'Dell v. Walsh, 81 So.2d 554 (Fla. 1955)]. Plaintiffs claim as authority to bring this action as authorized by Section 64.11, Florida Statutes, F.S.A., is untenable as to the facts in the case sub judice, and its application limited to those cases referred to in 823.05, Florida Statutes, F.S.A. Further, we must agree with the chancellor that the plaintiffs have failed to show in what manner they have been damaged as private citizens differing in kind from the general public, and, therefore, have no right to sue. [Deering v. Martin, 95 Fla. 224, 116 So. 54 (1928)]."
Upon certification of the decision to this Court, we held:
"The history, factual background, questions presented and disposition are clearly set out in the opinion of the District Court. Argument having been heard and the court having considered the records and briefs, it is our opinion that the ruling of the District Court is correct and it is adopted as the opinion of this court." Sarasota County Anglers Club v. Kirk, Fla., 200 So.2d 178.
Sub judice, as in Sarasota County Anglers Club, Inc. v. Burns, supra, there is no statutory authority for this cause of action wherein respondents, inter alia, seek to assert property rights in real estate owned by petitioner and no special injury differing in kind from that suffered by the public generally was alleged.
Although the District Court in the cause sub judice purports to recede from its earlier but recently decided decision of Askew v. Hold the Bulkhead  Save Our Bays, Inc., supra, we prefer and agree with their earlier decision enunciated therein. Askew v. Hold the Bulkhead  Save Our Bays, Inc. dealt with an attempt of a citizen's group to halt the construction of certain improvements within Oscar Scherer State Park, which park was donated to the State by the will of Elsa Scherer Burrows "for public recreation and as a wild life sanctuary." The trial court dismissed the citizen's group as having no standing, but allowed a private citizen to maintain the action. The District Court affirmed as to the group's lack of standing, but reversed as to the private citizen, holding him to be likewise without standing to sue. In so holding, the District Court stated:
"Neither of appellees has alleged or shown that one or the other of them will suffer a special injury or that either has a special interest in the outcome of this action. In order to maintain this kind of action, absent a sufficient predicate to a proper class suit (and there is no such predicate here), it is well settled that a plaintiff must allege that his injury would be different in degree and kind from that suffered by the community at large.
[See, e.g., Town of Flagler Beach v. Green (Fla. 1955), 83 So.2d 598; Henry L. Doherty & Co., Inc. v. Joachin (Fla. 1941), 200 So. 238; Smith v. Bolte (Fla.App. 1965), 172 So.2d 624; and Ashe v. City of Boca Raton (Fla.App. 1961), 133 So.2d 122.].
"If it were otherwise there would be no end to potential litigation against a given defendant, whether he be a public official or otherwise, brought by individuals or residents, all possessed of the same general interest, since none of them would be bound by res judicata as a result of prior suits; and as against public authorities, they may be intolerably hampered in the performance of their duties and have little time for anything but the interminable litigation.
[We again exclude from this rationale a proper `class action.']"
Our decision in Department of Administration v. Horne, 269 So.2d 659 (Fla. 1972), relative to the question of standing arose from facts clearly distinguishable from the instant cause, and cannot serve as *13 precedent for the District Court of Appeal's departure from the special injury rule in the case sub judice. Further, our holding therein affirming the trial court's finding of standing allowed only a very limited exception to the special injury rule. In Horne, supra, taxpayers contested the validity of provisions of the General Appropriations Act on constitutional grounds which related solely to the taxing and spending power. Therein, this Court, speaking through Justice Dekle, in a very narrow holding stated:
"All of these are valid reasons for allowing the exception which we hereby approve, limited to constitutional challenges on taxing and spending as earlier indicated.

* * * * * *
"Essentially, the `Rickman Rule' requires a showing of special injury. We find, however, that the instant case presents a valid exception to the so-called `Rickman Rule.' Appellees have alleged the unconstitutionality of certain sections of an appropriations act. These sections are said to be violative of constitutional provisions which place limitations upon enacting legislation regarding state funds. We hold that such allegation in this narrow area satisfied the requirement for `standing' to attack an appropriations act." (e.s.)
The narrowness of this holding is exemplified by the following excerpt from that decision,
"Applying this rationale, the U.S. Supreme Court said Mrs. Flast had standing to challenge the constitutionality of the 1965 Education Act because the establishment clause imposes a specific limitation upon the federal taxing and spending power. Thus we find that where there is an attack upon constitutional grounds based directly upon the Legislature's taxing and spending power, there is standing to sue without the Rickman requirement of special injury, which will still obtain in other cases. (e.s.)
Clearly, by its decision in Department of Administration v. Horne, supra, this Court did not intend to abrogate in any way the special injury rule in cases as those sub judice, but, in fact, recognized that it would still obtain in other cases. The District Court erred in finding that the special injury concept as a basis for standing no longer serves a valid purpose and that it should no longer be a viable expedient to the disposition of these cases. The standing test adopted by the Second District Court of Appeal constitutes a significant change in the law with which we cannot agree.
We adhere resolutely to our holding in Sarasota County Anglers Club, Inc. v. Kirk, supra, and other decisions of this Court relative to the concept of special injury in determining standing. See, inter alia, Henry L. Doherty & Co. v. Joachin, 146 Fla. 50, 200 So. 238 (1941), Town of Flagler Beach v. Green, 83 So.2d 598 (Fla. 1955).
Accordingly, the decision of the District Court is quashed and this cause is remanded with directions to reinstate the order of the trial court.
It is so ordered.
ADKINS, C.J., DEKLE, J., and HENDRY, District Court Judge, concur.
ERVIN, J., dissents with opinion.
BOYD and McCAIN, JJ., dissent and concur with ERVIN, J.
ERVIN, Justice (dissenting):
I think the majority decision is flatly contrary to the rights of citizens to corporately organize (legally assemble) in a nonprofit corporation under the First Amendment to the United States Constitution for the purpose of protecting the general *14 public's rights in common to the use and enjoyment of public property. The citizens of this state have long been accorded in common, under the inalienable trust doctrine, the use and enjoyment of navigable waters, tidelands, and sovereignty areas for bathing, boating, fishing and other recreational uses.
When there is neglect or refusal on the part of public officials (in this instance the Trustees of the Internal Improvement Fund or the Attorney General) to protect those rights in any area of the state, I see no legal reason why aggrieved or affected citizens of the local area cannot corporately organize for the peaceful protection of the public domain which they have so long enjoyed from disturbance from conflicting private interests and, if necessary, have standing to bring appropriate legal action in the process.
It is well recognized now that environmental protection, including protection of marine, animal and bird life and protection from dredging and filling in submerged bottom areas is highly essential to the general public's use and enjoyment of public areas under the inalienable trust doctrine.
Just as the standing of Senators Horne and Karl met with our approval in Department of Administration v. Horne (Fla. 1972), 269 So.2d 659, to sue as citizen taxpayers to protect the public's monies, I see little reason why the Respondent does not have standing to sue to protect the public's tidelands, including the recreational areas therein which the public has long enjoyed.
I agree with the Second District that
"a bona fide non-profit organization may sue for and on behalf of some or all of its members who have been or will be directly and personally aggrieved in some manner relating to and within the scope of the interests represented and advanced by such organization... ."
This case repeats the old story which I alluded to in City of Daytona Beach v. Tona Rama, Fla., 294 So.2d 73, Opinion filed March 25, 1974, of pretexts of one sort or another to favor the private sector, whether of standing to sue or otherwise, over the general public in disputes concerning the general public's traditional rights to enjoy public lands.
Again here, we have an example of this Court's express refusal to honor the District Court's constitutional authority as a final appellate court not to slavishly follow a decision of this Court. As I pointed out in dissent in Stewart v. Gilliam, Opinion filed January 10, 1974, there is no restraint upon a District Court in the area of its final appellate jurisdiction to follow a conflicting decision of this Court. Of course, if the decision involved the final appellate constitutional jurisdiction of this Court, e.g., construction of a controlling provision of the Constitution or passing on the validity of a statute, the decision of this Court is final and binding on the District Courts, but in a case of the instant kind determining legal standing to sue, final appellate jurisdiction in the particular case lies in the District Court. Certiorari jurisdiction of this Court with power to quash the decisions of the District Courts by per-case decisions does not mean that such certiorari decisions must be followed slavishly by the District Courts if the latter find good reasons and modern authority in later cases to hold otherwise. In other words, this Court's power to quash a decision in certiorari only operates as to the particular case. The quashal decision may have stare decisis value in the District Court's decisions, but it is not absolutely binding for the reasons set forth in my dissent in Stewart v. Gilliam, supra.
An illuminating case comment appears in University of Florida Law Review, Vol. XXVI, No. 2, Winter 1974, page 360, et seq., treating upon the decision of the Second District Court of Appeal in Save Sand Key, Inc. v. United States Steel Corp., Fla.App., 281 So.2d 572. It is especially *15 recommended for reading by those who may be concerned with the problem of standing to sue in situations of the kind presented in the instant case.
BOYD and McCAIN, JJ., concur.