QUESTION: Are the state and county required to comply with a city's planning and zoning ordinances in the use of state and county property located within the jurisdictional boundaries of that city?
SUMMARY: Until judicially determined to the contrary, and in the absence of express legislative immunity from zoning, it should be assumed that one local governmental unit, in the use of its property located within the jurisdictional boundaries of another local governmental unit, is bound by the zoning regulations of the latter; and, upon application for an exception, variance, or zoning change by one local governmental unit to the zoning authority of another governmental unit, a balancing-of-interests test should be applied. Until judicially determined to the contrary and unless the Legislature provides otherwise, the use of state property by the state or its agencies is not subject to local zoning regulations. In numerous previous opinions of this office, the majority view was stated that, in the absence of a clear legislative intent to the contrary, the use of state property by the state or its agencies is not subject to local governmental control. Attorney General Opinions 075-170, 074-237, 071-367, 071-203A, 071-203, 071-177, 066-10, and 065-81. See also 62 C.J.S. Municipal Corporations s. 157, p. 319; 72 Am. Jur.2d States s. 66, p. 463. [See] 1 Yokley Zoning Law Practice s. 2-26 (1965); Annot., 61 A.L.R.2d 970 (1958). This rule has also been extended in a number of jurisdictions to immunize property of one local governmental unit from local control by another governmental unit when used in furtherance of a governmental, as opposed to a proprietary, function. See 2 Yokley Zoning Law Practice s. 21-5 (1965). According to one annotator, the origin of this latter rule is subject to question, but considerations of sovereignty would appear to have entered into its formulation. Annot., 59 A.L.R.3d 1244, 1254 (1974). As stated therein, the principle of sovereignty gives the state supreme political authority in its relations with local governmental subdivisions but allows municipalities, counties, and the like to share certain attributes of this supremacy when they perform activities which benefit the general public as well as their own inhabitants. Id. One of these attributes, according to the rule, is the state's general immunity from regulation by its subordinate governmental units. In Florida, there has recently occurred a judicial movement away from these traditional rules. In Orange County v. City of Apopka,299 So.2d 652 (4 D.C.A. Fla., 1974), it was held that the municipalities there involved were required to apply to Orange County's zoning authority for a special exception or change in zoning in order to use agriculturally zoned land in the unincorporated area of the county for a municipal airport site. According to the court, in making a decision whether to grant such special exception or change in the county's zoning regulations, the county zoning authority was to apply a balancing-of-interests test. Rejecting the "rigid governmental function versus proprietary function test," the court stated at p. 655 that Rather than become limited by the governmental-proprietary distinction which could lead to situations which cry for relief, we feel the better rule, the rule allowing for the greatest flexibility and fairness, is one which requires that one governmental unit be bound by the zoning regulations of another governmental unit in the use of its extraterritorial property, purchased or condemned, in the absence of specific legislative authority to the contrary. In the absence of express legislative immunity from zoning, the intruding governmental unit should apply to the host governmental unit's zoning authority for a special exception or for a change in zoning, whichever is appropriate. The zoning authority is then in a position to consider and weigh the applicant's need for the use in question and its effect upon the host unit's zoning plan, neighboring property, environmental impact, and the myriad other relevant factors. If the applicant is dissatisfied with the decision of the zoning authority, it is entitled, pursuant to Section 163.250, F.S. 1971, F.S.A., to a judicial determination de novo wherein the circuit court can balance the competing public and private interests essential to an equitable resolution of the conflict. The court can consider, inter alia, the type of function involved, the applicant's legislative grant of authority, the public need therefor, the existing land use scheme, alternative locations for the facility in less restrictive zoning areas, alternative methods for providing the needed improvement, and the detriment to the adjoining landowners. If after weighing all pertinent factors the court finds the host government is acting unreasonably, the zoning ordinance should be held inapplicable to the proposed improvement, just as was done in State ex rel. Helseth v. DuBose, 99 Fla. 812, 120 So.[4] (1930). The opinion then went on to explain how, in Helseth v. DuBose, supra, the Florida Supreme Court held a county subject to a city's zoning ordinance in the use of county property for a governmental purpose but struck down the zoning restriction as the restriction applied to the particular use because of the surrounding facts and circumstances of the case. See also Palm Beach County v. Town of Palm Beach, 310 So.2d 384 (4 D.C.A. Fla., 1975), in which the same appellate court that decided Orange County v. City of Apopka, supra, affirmed a lower court decision which held Palm Beach County to be bound by the zoning regulations of the Town of Palm Beach in the use of county property within the territorial limits of that municipality. In so affirming, the court stated at p. 385: We affirm the general proposition of law espoused in Orange County v. City of Apopka, supra, to the effect that one governmental unit is bound by the zoning regulations of another governmental unit where one governmental unit seeks to utilize property within the geographical limits of a different governmental unit without regard to the so-called governmental-proprietary distinction; in resolving conflicts between different governmental units the balancing of competing interests test is to be applied.
The court again cited State ex rel. Helseth v. DuBose, supra, 310 So.2d at p. 385. In this regard, see Eddings v. Davidson,302 So.2d 155, 157 (1 D.C.A. Fla., 1974), for the proposition that "the last pronouncement of the Supreme Court of Florida on a given subject or point, if based upon factually similar circumstances, is controlling." See also Hill v. State, 302 So.2d 785 (4 D.C.A. Fla., 1974); and United States Steel Corporation v. Save Sand Key,303 So.2d 9 (Fla. 1974). Applying the foregoing general principles and judicial language to the instant inquiry, it would appear to be the developing rule in this state that one local governmental unit, in the use of its property located within the boundaries of another local governmental unit, is bound by the latter's zoning regulations; and that, upon application for an exception, variance, or zoning change by one local governmental unit to the zoning authority of another governmental unit, a balancing-of-interests test should be applied. Cf. AGO 074- 357. As to the state's immunity from local regulation in the use of its property, neither the Florida Supreme Court decision in State ex rel. Helseth v. DuBose, supra, nor the recent appellate court decisions which have addressed the issue of such jurisdictional conflicts between governmental entities specifically involved local regulation of state property. Moreover, as mentioned hereinabove, the state's relationship with local governmental units — unlike local governmental units' relationship with one another (to which the governmental-proprietary distinction has been primarily applied) — is one of supreme political authority and involves a consideration of state sovereignty. See Art. VIII, ss. 1(a) and 2(a), State Const. See also Kentucky Ins. for Education of Blind v. City of Louisville, 97 S.W. 402, 404 (Ky. 1906), one of the earliest cases to espouse the traditional rule, in which it was stated: "How can the city have ever a superior authority to the state over the latter's own property, or in its control and management? From the nature of things it cannot have." Cf. State ex rel. Charlotte County v. Alford, 107 So.2d 27, 29
(Fla. 1958), stating that "[a]lthough our statutes specifically exempt such state-owned lands [from county taxes], such exemption is not dependent upon statutory or constitutional provisions but rests upon broad grounds of fundamentals in government." Thus, I cannot conclude that the developing rule, as described supra, extends to the use of state property by the state or state agencies, and I continue to adhere to the position that the state is immune from local regulation unless the Legislature provides otherwise. Cf. AGO's 075-170 and 074-237.