QUESTION: May the Department of General Services, in connection with its supervision of construction of the Tallahassee- Leon County Civic Center, which is to be funded by the state and local governments, levy and assess a fee which is a percentage of the total cost of constructing the civic center?
SUMMARY: Provided the requirements and conditions set out therein are present and satisfied, s. 13 of Ch. 75-280, Laws of Florida, the 1975 General Appropriations Act, grants apparent authority to the Department of General Services to levy and assess a reasonable fee, determined on a reasonable basis, for supervising the construction of the Tallahassee-Leon County Civic Center being funded jointly by the state and local governments. However, in light of that section's susceptibility to constitutional challenge under s. 12, Art. III, State Const., it would be advisable that the department refrain in this instance from assessing a fee which is based in part on the cost of construction funded by the City of Tallahassee and Leon County. In any event, unless reenacted, s. 13 of Ch. 75-280 will apparently expire and be of no further legal efficacy after June 30, 1976. Section 13, Ch. 75-280, Laws of Florida, the 1975 General Appropriations Act, provides as follows: The Department of General Services, Division of Building Construction and Maintenance, is hereby authorized to levy and assess an amount for supervision of the construction of each fixed capital outlay project on which they serve as owner-representative on behalf of the state. The amount is subject to the approval of the Department of Administration and is to be transferred to the architects incidental trust fund of said division from appropriate construction funds upon the award of construction contract. Applying the plain and obvious meaning of this provision to your inquiry, see Maryland Casualty Company v. Sutherland, 169 So. 679
(Fla. 1936), it would appear that the Department of General Services is authorized to levy and assess a fee for supervision of the construction of the civic center in question, provided that the civic center is a fixed capital outlay project, the department is serving as owner-representative on behalf of the state, and the fee is approved by the Department of Administration. The word "authorized" in common usage ordinarily denotes permission rather than a mandatory direction. See Webster's Third New International Dictionary (1966), pp. 146-147, defining "authorize" in part to mean "endowing formally with a power or right to act, usually with discretionary privileges"; see also 4A Words and Phrases, pp. 602-619; Morgan v. Wilson, 450 P.2d 902, 903 (Okla. 1969). As to the manner in which the amount of such fee, if imposed, should be fixed, it is ultimately the function and responsibility of the Governor and Cabinet, as head of the Department of General Services, s. 20.22(1), F. S., to make such determination. See s.20.05(1)(a) and (b), F. S. Thus, if the Department of Administration approves, and the other requirements and conditions of s. 13 of Ch. 75-280, supra, are present and satisfied, the Governor and Cabinet have the apparent power to levy and assess a reasonable fee, determined upon a reasonable basis, for supervision by the Department of General Services of construction of the civic center. Cf. AGO 076-52. Having so concluded, however, I feel compelled in these circumstances to point out that your inquiry raises an obvious and serious constitutional issue. Section 12, Art. III, State Const., provides: Laws making appropriations for salaries of public officers and other current expenses of the state shall contain provisions on no other subject. This provision has been consistently interpreted by the Florida Supreme Court as prohibiting the Legislature from making laws on other subjects in an appropriations bill, unless the other subjects are so relevant to, interwoven with, and interdependent upon the appropriations as to jointly constitute a complete legislative expression on the subject. See Dickinson v. Stone,251 So.2d 268 (Fla. 1971); Advisory Opinion to the Governor,239 So.2d 1 (Fla. 1970); Lee v. Dowda, 19 So.2d 570 (Fla. 1944), construing s. 30, Art. III, State Const. 1885; Opinion of Justices, 14 Fla. 282
(1872); and Opinion of Justices, 14 Fla. 286 (1872). Most recently, in Department of Administration v. Horne, 269 So.2d 659
(Fla. 1972), the court held that a challenge to certain provisions of the 1971 General Appropriations Act was moot since the protracted litigation in that case had consumed the fiscal year. However, the court set out several of the challenged provisions of the act — including an exact precursor of s. 13 of Ch. 75-280, Laws of Florida, with which this opinion is concerned — and indicated its thinking on the substantive issue as follows: Actual modifications of existing statutes or new provisions which are plainly substantive in nature and upon a subject other than appropriations are in violation of Fla. Const. art. III, s. 12. Separate provisions impinging upon the expenditures set forth, which involve existing statutes and which should have been enacted as general legislation, are contrary to this constitutional safeguard prohibiting substantive law or additional subjects being enacted by way of an appropriations bill. This prevents such issues from being fairly debated and voted upon separately and, in some instances, avoids the authorized "line veto" of the Governor, thus accomplishing indirectly what could not be done directly. There could in the guise of "appropriations" be designations inserted in the Act which could actually establish new agencies or projects incidental to the appropriation, if this principle were not strictly adhered to. Without benefit of the required general legislation first establishing such agency or project, such indulgence would deny the vital independent consideration by legislative committees and the general body, as to the validity or need for such agencies. It could also be a subtle approach to government "empire building". In such instances, the evil does not end with the fiscal year which first creates such an agency. Having been established, subsequent appropriations can be granted to it and the agency thereby perpetuated without ever having legitimate birth. Such indirect enactment of law is contrary to our principles of representative government. Applying the foregoing case law to the instant inquiry — particularly the last mentioned case, in which the 1971 version of the provision here under consideration was mentioned — it would appear that s. 13 of Ch. 75-280, Laws of Florida, is subject to a significant constitutional challenge, i.e., that such section concerns a subject other than appropriations and is not so relevant to, interwoven with, and interdependent upon any appropriation contained in Ch. 75-280 as to justify its inclusion therein. Accordingly, I am of the opinion that it would be advisable in this particular instance, the civic center being a joint governmental undertaking and local funds being involved, that the Department of General Services refrain from assessing a fee for construction supervision which is based in part on the costs of the civic center's construction funded by the City of Tallahassee and Leon County. In any event, unless reenacted by the 1976 Session of the Florida Legislature, s. 13 of Ch. 75-280, being like most other provisions of general appropriations acts, will apparently expire and will be of no further legal efficacy after the end of the current fiscal year, June 30, 1976. Cf. Department of Administration v. Horne, supra.