736 So.2d 741 (1999)
CITY OF SARASOTA, a municipal corporation under the laws of the State of Florida, Appellant,
v.
Robert E. WINDOM and John A. Hartenstine, Appellees.
No. 98-02595.
District Court of Appeal of Florida, Second District.
June 23, 1999.
Michael S. Perry of Taylor, Lawless & Singer, P.A., Sarasota, for Appellant.
J. Michael Hartenstine, Sarasota, for Appellees.
Betsy M. Steg, Sr. Assistant County Attorney, Clearwater, for Amicus Curiae Florida Association of County Attorneys, Inc.
Leslie K. Dougall-Sides, City Attorney, Clearwater, for Amicus Curiae City of Clearwater.
Charles J. Bartlett and Andrew K. Fritsch of Icard, Merrill, Cullis, Timm, Furen & Ginsburg, P.A., Sarasota, for Thomas A. Dickerson, et al., as Representative of South Sarasota Traffic Calming Task Force.
CASANUEVA, Judge.
The City of Sarasota appeals injunctions enjoining the City from erecting speed *742 humps and speed tables on City streets and requiring it to remove all previously placed speed humps and speed tables. Because we conclude that the plaintiffs, Robert Windom and John A. Hartenstine, lacked standing, we reverse the summary final judgments entered against the City.
The City approved implementation of Phase I of the South Sarasota Traffic Abatement Plan at its regular meeting of May 6, 1996. Phase I included the placement of speed humps and speed tables on various City streets to reduce the volume and speed of traffic and to enhance pedestrian safety. The cost to complete the installation of the asphalt speed humps and brick and concrete speed tables was $105,239. Mr. Windom and Mr. Hartenstine live in different neighborhoods within the City, and neither is required to traverse any of the speed humps or speed tables for normal ingress or egress to his residence.
On August 22, 1996, Mr. Windom and Mr. Hartenstine instituted a two count civil complaint against the City. One count sought a permanent injunction enjoining the City from installing speed humps or speed tables within the City. The second count sought a permanent mandatory injunction requiring the removal of those speed humps and speed tables already installed. Count I asserted the City lacked legal authority to approve the installation of the speed humps and tables because the devices do not conform to the requirements of chapter 316, Florida Statutes (1995). Count II asserted their installation obstructs the normal use of the City's streets in violation of chapter 316. The City sought to dismiss the action, alleging the plaintiffs lacked standing. The trial court concluded otherwise, denied the motion, and ultimately entered a summary final judgment on both counts for the plaintiffs. This appeal ensued.
In section 316.0745(1), Florida Statutes (1995), the legislature granted the Department of Transportation authority to adopt a uniform system of traffic control devices for use on Florida's streets and highways. Section 316.0745(3) requires that all traffic control signals or devices installed by a public body, such as the City, conform with the DOT's regulations. The authority to direct the removal of any traffic control device that fails to meet the requirement of section 316.0745 rests with the DOT. See § 316.0745(7). This authority extends to an improper device "wherever located." Id. Further, the DOT may require a public agency such as the City immediately to remove an offending device, but the DOT never took any action to direct the removal of the City's speed humps or tables.
Legislative intent is the luminous polestar by which this court must be guided. See In re: Order on Prosecution of Criminal Appeals by Tenth Judicial Circuit Public Defender, 561 So.2d 1130, 1137 (Fla.1990). Therefore, we must ascertain whether the legislature intended to create a private cause of action by enacting section 316.0745. In Murthy v. N. Sinha Corp., 644 So.2d 983, 986 (Fla.1994), the supreme court stated that "a statute that does not purport to establish civil liability but merely makes provision to secure the safety or welfare of the public as an entity, will not be construed as establishing a civil liability." We determine that analysis to be appropriate here. The legislative intent of chapter 316 is to provide for the public safety of both vehicle operators and pedestrians by standardizing equipment and by ensuring that each device is appropriate for its function. Further, the enforcement power for section 316.0745 is vested in the Department of Transportation. In the absence of legislative intent to create a private cause of action on behalf of citizens seeking to challenge an allegedly improper traffic control device, we decline to create such a cause of action. Therefore, the plaintiffs possess no private cause of action and, accordingly, lack standing to institute such a claim.
We next consider whether standing derives from any other basis. First, because the plaintiffs claim entitlement to the protections *743 afforded by section 316.0745, Florida Statutes, they contend that they can seek redress in the courts as guaranteed by Article I, Section 21, of the Florida Constitution. As to this contention, we have held that section 316.0745 does not create a privately enforceable duty; therefore, the argument that redress is available in the courts for the claimed injury also fails.
The second question is whether the plaintiffs possess standing by filing of a taxpayer suit or by means of a constitutional attack. In Boucher v. Novotny, 102 So.2d 132, 135 (Fla.1958), the supreme court held that "one seeking redress, either preventive or corrective, against an alleged violation of a municipal zoning ordinance must allege and prove special damages peculiar to himself differing in kind as distinguished from damages differing in degree suffered by the community as a whole." The rule was applied to a taxpayer challenge to a claimed illegal expenditure of public funds. In North Broward Hospital District v. Fornes, 476 So.2d 154, 155 (Fla.1985) (quoting Department of Revenue v. Markham, 396 So.2d 1120, 1121 (Fla.1981)), the supreme court reiterated the requirements of standing, commenting that
[i]t has long been the rule in Florida that, in the absence of a constitutional challenge, a taxpayer may bring suit only upon a showing of special injury which is distinct from that suffered by other taxpayers in the taxing district.
In the present case, the plaintiffs neither allege nor demonstrate a special injury. The challenged devices reduce the speed of all vehicles traversing them; the plaintiffs are no more impeded than any other citizen. Consequently, the plaintiffs have no standing on this ground.
Finally, we note that an exception to the requirement of special injury was established in Department of Administration v. Horne, 269 So.2d 659 (Fla.1972). A party possesses standing if it can establish that the constitutional challenge centers upon a legislative body's taxing and spending power. See also School Bd. of Volusia County v. Clayton, 691 So.2d 1066, 1067 (Fla.1997)(finding that action of a public board that wastes public money does not rise to the level of a constitutional issue when it is asserted that the public board exceeded its authority granted by the legislature). Clearly, the plaintiffs do not challenge the City's spending power; equally clearly, the City is empowered to design, build, and maintain its streets. Rather, the plaintiffs have tested the City's authority to install a specific type of device. The power to challenge that installation, however, rests not with the plaintiffs, but with the Department of Transportation.
The plaintiffs cite Renard v. Dade County, 261 So.2d 832 (Fla.1972); City of Miami v. Save Brickell Ave., Inc., 426 So.2d 1100 (Fla. 3d DCA 1983); and Skaggs-Albertson's v. ABC Liquors, Inc., 363 So.2d 1082 (Fla.1978); in further support of their standing position. However, those cases are readily distinguishable as generally dealing with a procedural challenge, such as a lack of notice, to the local government's legislation. There is no such procedural irregularity in the instant case.
Because the plaintiffs lacked standing to challenge the City's action, the summary final judgments are reversed with directions to enter judgment for the City. In closing, we recognize that the standing rules are founded upon public policy choices that are debatable. See Paul v. Blake, 376 So.2d 256 (Fla. 3d DCA 1979). But where litigants who bring an action challenging governmental injury are unable to distinguish their situation from others similarly situated, the result is an unwarranted consumption of limited judicial resources. See United States v. Richardson, 418 U.S. 166, 180, 94 S.Ct. 2940, 41 L.Ed.2d 678 (1974) (Powell, J., concurring). If a majority of the citizenry concurs with *744 the plaintiffs' position, the remedy is only as far away as the next election.
CAMPBELL, A.C.J., and THREADGILL, J., Concur.