944 So.2d 1092 (2006)
Earl SMITH, Appellant,
v.
CITY OF FORT MYERS and Lee County, Appellees.
No. 2D06-1693.
District Court of Appeal of Florida, Second District.
November 17, 2006.
*1093 Steven Carta of Simpson, Henderson, Carta & Randolph, Fort Myers, for Appellant.
Harold N. Hume, Jr., and J. Matthew Belcastro of Henderson, Franklin, Starnes & Holt, Fort Myers, for Appellee City of Fort Myers.
David M. Owen, Lee County Attorney, and Jack N. Peterson, Assistant County Attorney, Fort Myers, for Appellee Lee County.
STRINGER, Judge.
Earl Smith seeks review of an order granting final summary judgment in favor of the City of Fort Myers and Lee County (together "Appellees") in Smith's declaratory judgment action. We conclude that Smith lacked standing to bring the declaratory judgment action and affirm.
Smith filed a complaint in the circuit court seeking a judicial declaration of the validity of the City's transfer to the County of its ownership of City of Palms Park ("the Park"), which serves as the spring training grounds for the Boston Red Sox. Specifically, Smith alleged that the City violated the notice requirements of the city code and section 163.380, Florida Statutes (2003).
Appellees responded to the complaint by filing motions to dismiss which argued that the complaint failed to state a cause of action and did not allege any basis for standing. The circuit court subsequently granted the motions, ruling that the amended complaint failed to state a cause of action. The court rejected Appellees' standing argument by finding that Smith would have had standing to bring the claim if the complaint had stated a cause of action.
On appeal of that order, this court reversed and remanded the case for further proceedings. See Smith v. City of Fort Myers, 898 So.2d 1177, 1178 (Fla. 2d DCA 2005). This court did not address the circuit court's finding that Smith had standing to bring the action, although the City raised the issue on appeal as an alternative basis for affirmance or as a "Tipsy Coachman" argument, see Robertson v. State, 829 So.2d 901, 906 (Fla.2002).
On remand, the parties entered into a stipulation regarding the undisputed facts, and Smith and the City filed motions for summary judgment based on those stipulated facts. The court granted the City's summary judgment motion and entered a final summary judgment in favor of Appellees. Smith appealed, and the City reasserts its standing argument as an alternative basis for affirmance. The City argues that Smith lacks standing to challenge the transfer of the Park because Smith has not established a special injury apart from his interest in the transfer of the Park as a taxpayer. Smith raises two arguments in response to the City's standing argument.
*1094 First, Smith argues that the issue of his standing has already been decided by the circuit court and affirmed on appeal. Thus, according to Smith, the City is barred from raising the issue by the doctrine of the law of the case. "The doctrine of the law of the case requires that questions of law actually decided on appeal must govern the case in the same court and the trial court, through all subsequent stages of the proceedings." Fla. Dep't of Transp. v. Juliano, 801 So.2d 101, 105 (Fla.2001). The doctrine of law of the case thus applies only to those issues "actually decided on appeal," whether explicitly or implicitly. Id. at 105-06.
Contrary to Smith's argument, this court did not decide the issue of standing in the first appeal. The issue was not raised as a basis for reversal by Smith as the appellant but was raised as an alternative basis for affirmance by the City as an appellee. This court's reversal on an entirely different basis does not mean that it considered the City's "Tipsy Coachman" argument. See Warren v. Shands Teaching Hosp. & Clinics, Inc., 700 So.2d 702, 704 (Fla. 1st DCA 1997) (holding that an alternative ground for affirmance was not necessarily decided and thus did not trigger the doctrine of law of the case). Because the issue of standing was not actually decided on appeal, the City is not barred from raising it by the doctrine of law of the case.
Smith's second argument is that he is not required to establish a special injury in order to challenge the legality of the transfer of the Park. Generally, a private citizen is precluded from filing a taxpayer complaint to challenge government action unless the private citizen alleges and proves a "special injury," which is an injury that is different from that of the general public. N. Broward Hosp. Dist. v. Fornes, 476 So.2d 154 (Fla.1985); Rickman v. Whitehurst, 73 Fla. 152, 74 So. 205 (1917). This has been termed the "Rickman rule" or "special injury rule."
The supreme court has recognized that the special injury rule is not absolute. First of all, if there is legislation expressly providing for standing, the special injury rule does not apply. See, e.g., Fla. Wildlife Fed'n v. State Dep't of Envtl. Regulation, 390 So.2d 64, 67 (Fla.1980) (holding that a showing of special injury was not required to bring an action pursuant to the EPA). In addition, the supreme court created an exception to the special injury rule for constitutional challenges to government action alleging a violation of the legislature's taxing and spending power. Dep't of Admin. v. Horne, 269 So.2d 659, 663 (Fla.1972).
Smith acknowledges the continued validity of the special injury rule to taxpayer suits. He has not alleged any special injury in this case, and he does not argue that there is legislative authority for standing or that the case somehow involves a constitutional challenge to government action alleging a violation of the legislature's taxing and spending power. Instead, Smith argues that under Renard v. Dade County, 261 So.2d 832, 835 (Fla.1972), he has standing because he is challenging the legality of the City's procedures used to transfer its ownership of the Park to the County. We conclude that Smith's reliance on Renard is misplaced because Renard applies only in the context of zoning suits.
Although originally applied in taxpayer suits, the special injury rule was extended to zoning suits in Boucher v. Novotny, 102 So.2d 132 (Fla.1958). In Renard, the supreme court limited the application of the special injury rule in zoning suits by holding that "[t]he Boucher rule was not intended to be applied to zoning matters other than suits by individuals for zoning *1095 violations." 261 So.2d at 835. The Renard court thus concluded that an attack on a zoning ordinance enacted without proper notice could be brought by "[a]ny affected resident, citizen or property owner of the governmental unit in question" as previously set forth by supreme court precedent. Id. at 838. There is no indication in Renard that its exception applies in any context other than zoning suits.
In fact, the supreme court has twice mentioned the Renard exception as applying in the narrow context of zoning decisions. See Citizens Growth Mgmt. Coalition of W. Palm Beach, Inc. v. City of W. Palm Beach, Inc., 450 So.2d 204, 206 (Fla. 1984) ("The question of standing to challenge zoning decisions was comprehensively explained in Renard v. Dade County."); Fla. Wildlife Fed'n, 390 So.2d at 67 (noting that the supreme court has carved out an exception to the special injury rule in zoning suits and citing Renard for this proposition). Furthermore, in a case issued a decade after Renard, the supreme court expressly reaffirmed the validity of the special injury rule and noted that there is only one exception to this rule in the context of taxpayer suits, which is the exception for constitutional challenges set forth in Horne. Fornes, 476 So.2d at 156 ("This Court has refused to depart from the special injury rule or expand our exception established in Horne.").
Smith cited the following cases in support of his argument for the extension of Renard: City of Miami v. Save Brickell Ave., Inc., 426 So.2d 1100 (Fla. 3d DCA 1983); Upper Keys Citizens Ass'n v. Wedel, 341 So.2d 1062 (Fla. 3d DCA 1977); Godheim v. City of Tampa, 426 So.2d 1084 (Fla. 2d DCA 1983); and City of Sarasota v. Windom, 736 So.2d 741 (Fla. 2d DCA 1999). None of these cases compels such a reading of Renard.
Save Brickell Avenue and Upper Keys Citizens Ass'n are not persuasive because in those cases the Third District applied the Renard exception to challenges in zoning suits. Save Brickell Ave., 426 So.2d at 1103; Upper Keys Citizens Ass'n, 341 So.2d at 1064.
In Godheim, this court declined to apply the special injury rule to determine the standing of a taxpayer to challenge the award of a governmental contract based upon a violation of the notice requirements of the Sunshine Law. 426 So.2d at 1087-88. However, this court did not apply the special injury rule because standing was expressly conferred by the Sunshine Law. Id. at 1088. Thus, Godheim is not controlling because an exception to the special injury rule for taxpayer suits applied. Furthermore, this court did not cite Renard anywhere in its opinion.
The final case cited by Smith is Windom, a taxpayer suit in which the plaintiffs cited Renard in support of their argument that they had standing to seek permanent injunctions enjoining the City of Sarasota from installing speed humps or tables within the City and requiring the removal of speed humps or tables that had already been installed. 736 So.2d at 743. This court recognized the validity of the special injury rule and rejected the plaintiffs' suggestion that Renard applied, describing the exception as "generally dealing with a procedural challenge, such as a lack of notice, to the local government's legislation." Id. Smith's interpretation of this language as an extension of Renard to taxpayer suits is misplaced. Because this court did not apply the Renard exception in the taxpayer suit, the language is, at best, dicta.
Based on the above analysis, we can discern no legal basis to extend the Renard exception beyond zoning matters to all matters in which the legality of a procedural *1096 enactment is at issue. Therefore, the special injury rule governs standing in this case. Because Smith failed to establish such a special injury, he lacked standing to file the declaratory judgment action. Accordingly, we affirm the circuit court's order granting final summary judgment in favor of Appellees.
Affirmed.
CASANUEVA and LaROSE, JJ., Concur.