CITY OF DAYTONA BEACH, *et al.,* v. NEWS-JOURNAL COR-
PORATION.

156 So. 887.
En Banc.
Opinion Filed September 28, 1934.

*Millard B. Conklin* and *H. B. Hodgden,* for Appellants;
*Green & West,* for Appellee.

BUFORD, J.—In this case an amended bill for injunction
was filed on April 30, 1934, and thereafter, such amended
bill was three times amended.

Objections were filed to the granting of any injunctive
relief on May 3, 1934.

On May 9, 1934, the Court entered an order whereby the
City and its officials were collectively and severally enjoined
and restrained from "paying to any person, firm or corpo-
ration any money of the City of Daytona Beach and from
issuing, signing or countersigning any warrant or warrants
of said City therefor, for the printing of any newspaper
publication or publications made by the defendant City of
Daytona Beach since this date, unless the amount to be so
paid shall be computed and based upon and at the best and
lowest rate offered to the City for such publication by a
newspaper of general circulation in the City, upon and after

reasonable, equal and fair opportunity given to each and all of the newspapers of general circulation in said City to make such offer."

It was further ordered that that order should become effective upon the filing of a bond as designated in the further order.

In the same date a further order was entered which was as follows:

"*Whereas,* it has been represented to this Court, on the amended bill of complaint of plaintiff herein, amended, exhibited and on file in this court, against you, and each of you, among other things, that you are not complying with certain provisions of Section 45 of the City Charter of the City of Daytona Beach with reference to the printing of newspaper publications by said City, and that your actions and doings in the premises are contrary to equity; and the Judge of said Court having ordered that a writ of injunction and temporary restraining order issue out of said Court, according to the prayer of said bill in consideration thereof, and of the particular matters in said amended bill, as amended, set forth:

"You, City of Daytona Beach, a municipal corporation under the laws of the State of Florida, E. H. Armstrong, Elmer Bland, J. D. McMillan, Harry Wilcox and Ralph Richards, as members of the City Commission of the said City of Daytona Beach, Florida, M. S. Couch as City Manager of said City, and Francis Mills, as City Clerk and Collector of said City, defendants herein, and each of you, are hereby strictly enjoined and commanded to restrain:

"1.   From paying out any moneys of the City of Daytona Beach, to any person, firm or corporation, and from issuing, signing or countersigning any warrant or warrants of said City therefor, for or on account of any newspaper publication made by the City since this date, unless the

amount to be so paid shall be computed and based upon and at the best and lowest rate offered to the City for such publication by a newspaper of general circulation in said City, upon and after reasonable, equal and fair opportunity given to each and all of the newspapers of general circulation in said City to make such offer.

"WHEREOF FAIL NOT, under penalty of what the law directs."

The relief granted was that sought by the bill.

The bill was filed by a taxpayer and the relief sought in the capacity of a taxpayer. The bill alleges in effect that the City officials named as defendants were causing legal notices required to be published in a newspaper in the City to be published in a newspaper without having first procured offers or bids from that or other newspapers naming a price at which such legal notices would be published. That there were other newspapers published in the City of Daytona Beach beside that newspaper in which the legal notices required by law to be published were being published and that the defendant City officials had been paying, and were then paying and would continue to pay the newspaper which was publishing such notices a greater amount than another newspaper published in the City of Daytona Beach would charge for like publication. It was specifically charged and alleged in the Bill of Complaint that the newspaper which published those notices was receiving from the City officials and would continue to receive from them the sum of $1.00 per inch for the first inch and 50 cents for each subsequent inch of column space used in the publication of such notices, while like notices were offered to be published by another newspaper in the City for 30 cents per column inch of such notices.

The bill further alleged that under the provisions of Section 45 of the City Charter, the same being Chapter 11464,

Laws of Florida, Extraordinary Session of November, 1925, it was provided:

"Mode of Publication.—All of the above mentioned publications as well as all other newspaper publications made by the City shall be printed in a newspaper of general circulation in the municipality, in the body type of the paper and under headlines in eighteen point type, specifying the nature of the publication. The newspaper carrying such publication shall be paid a price per inch of space used and at the best and lowest rate offered, not exceeding that which the paper received from regular legal advertisers for the cost of space used."

It is alleged that the publications referred to come within the purview of this section of the ordinance and that the effect of this ordinance is to require the proper governing officials to give a full and free opportunity to newspapers published within the City to submit to such officials a proposition or proposal, or bid, stating a price at which they will publish such notices in the manner required by law and that it is thereupon the duty of such governing officials to award the publication to that newspaper which offers the best and lowest rate.

Appeal was taken to this Court from the temporary order of injunction, from order denying motion to dissolve injunction and from order overruling motion to dismiss the bill of complaint.

It is contended by the appellant that the provisions of Section 45 above quoted do not require the governing officials to ask for bids or offers from newspapers naming a rate or price at which they will publish the legal notices required to be published by such municipality. It is further contended that the above quoted provision of the charter leaves it a matter entirely within the discretion of the governing officials to determine what newspapers such notices.

shall be published in and only requires that they should not pay a higher rate for such publications than that which the paper receives from regular legal advertisers for the cost of like space.

· It is further contended that the National Code promulgated under authority of the National Recovery Act pertaining to the publication of legal notices in newspapers precludes any newspaper from publishing any legal notices at a rate less than that which is fixed by statute in this State and that, therefore, the publisher is required to charge that rate which the record shows the publisher has been charging and purports to continue to charge the City of Daytona Beach for the publication of its legal notices.

This appellant relies upon provisions of Section 2944 R. G. S., 4668 C. G. L., except where the statute provides a different rate for particular classes of notices such, for instance, as the publication of the delinquent tax list and notices of tax sales.

We do not think that the question of the application of the Code governing newspapers promulgated under the authority of the National Recovery Act is involved in this case. It appears to us that the only question to be determined here is whether or not Section 45 of the City Charter, *supra,* requires or contemplates that the governing officials of the City should procure proposals from newspapers published in the City for the publication of legal notices and thereafter should award the publication of said notices to that paper and at that price which presents the best and lowest rate offered for such publication and which is within the limitations fixed by this section of the Charter. And, if so, then whether or not the governing officials, the defendants in the court below, have pursued that course as shown by the allegations of the bill of complaint which for the purpose of the questions presented here are admitted to be true.

We think that unless the provision of Section 45, *supra,* meant that the publication of legal notices should be let to the lowest and best bidder that it can have no logical importance in the Charter. The provision was evidently put in the Charter for a purpose, which purpose evidently was to require the governing authorities to procure such public service at the most economical price consistent with observance of the law and efficient service. Its purpose was to prevent public officials rewarding their friends with public funds in payment of services which could be procured and performed lawfully and efficiently for less of the taxpayers' money. See Lassiter v. Taylor, 99 Fla. 819, 128 Sou. 14; Wester v. Belote, 103 Fla. 976, 136 Sou. 721; Anderson v. Fuller, 51 Fla. 380, 41 Sou. 684.

The opinion in the case of Wester v. Belote, *supra,* is authority for the holding that "citizens and taxpayers, when shown as such, undoubtedly have the right to injunctive relief to protect the public treasury against illegal disbursements of public funds which it is charged will result from the carrying out of an unauthorized or illegal contract," and that in such case "no other showing is required of complainant than that he allege his status as a citizen and taxpayer and point out that the threatened disbursement of public funds is for an unauthorized or illegal purpose, whether any actual fraud or misconduct was intended or contemplated thereby or not.

In this case the provisions of the Code promulgated under the National Recovery Act are not pleaded and, in fact, the consideration thereof is not necessary here because in this case the complainant as a taxpayer only seeks to require the governing officials of the Municipality to proceed according to law in procuring the publication of legal notices by that newspaper which proposed the best and lowest offer for that service. The legality of the offer might become a question

to be determined when such offer is made and in a proper case under apt pleadings such question may be judicially determined.

As we construe the Orders appealed from, they only require the appellants here, who were defendants in the court below, to do that which it was their duty to do under the above quoted provisions of the Charter and which the pleadings show they have not done.

Therefore, there was no error in such Orders and they should be affirmed.

It is so ordered.

Affirmed.

DAVIS, C. J., and WHITFIELD, TERRELL and BROWN, J. J., concur.

ELLIS, J., concurs specially.

ELLIS, J. (concurring).—I think this bill states a case which warrants the issuing of the injunction because it appears that the City is paying for publications a rate per inch in excess of that rate for which other newspapers offer to render this service, but I do not agree that Section 45 of the City Charter requires the submission of all propositions for publications legal or otherwise to competitive bidding as each publication is required to be made. To meet the requirements of the Charter and preserve the supposed virtuous economic end of its enactment the City officials could periodically during the year classify its required publications and ask for bids for the printing during that period and be governed by the rate approved.