66 So.2d 489 (1953)
LEWIS et al.
v.
PETERS.
Supreme Court of Florida, Special Division A.
July 21, 1953.
*490 Warren L. Fitzpatrick, H.P. Sapp, of J.M. & H.P. Sapp, Panama City, for appellants.
Charles S. Isler, Jr., Ernest W. Welch and Liddon, Isler & Welch, Panama City, for appellee.
HOLT, Associate Justice.
This is an appeal based upon the actions of the lower court in denying a motion to dismiss the bill of complaint and the entry of the following final decree:
"The above cause coming on for final hearing, all parties to the cause being present before the Court and represented by the respective counsel of record for each, and the Court hearing the testimony and evidence adduced on behalf of the plaintiff, no testimony having been presented for and on behalf of the defendant, and being further advised in its opinion, finds as follows:
"1. That the Court has jurisdiction of the parties and the subject matter of this cause.
"2. That H.M. Lewis, Rea Steele, Doyle Koon, L.T. Byrd and Casper E. Harris, as and constituting the Commissioners of the Housing Authority of the City of Panama City, Florida, have the authority and legal rights to acquire ownership and title to the property described in the bill of complaint as Maritime No. 1 project, said property being described as follows:
"Fractional North 1/2 of Section 34, Township 3 South, Range 15 West, lying North of State Road # 10, together with the riparian rights thereunto appertaining, less and except parcel conveyed to State Improvement Commission, and less and except the right of way for said State Road # 10.
"Also
"A certain lot in the Northwest 1/4 of Section 35, Township 3 South, Range 15 West, a more particular description of which is unknown to the plaintiff.
"3. That the defendants, and each of them, and their successors in office, have no right, power or authority to enter into any contract with the authorities of the United States Navy for the furnishing of housing accommodations for Naval personnel or civilian employees of the United States Navy, but that they do have the right to rent to United States Navy personnel, whether military or civilian, any dwelling units where such personnel meet the requirements for admittance into housing projects for persons of low income.
"4. That the defendants have no right, power or authority to enter into any contracts, understandings or agreements with private persons or corporations for the leasing or sale of the property hereinabove described, should they acquire same from the United States Government, but that they do have the right and authority to enter into contracts for the construction of residential units for persons of low income with private persons or corporations where such private person or corporations will have no control or ownership over the same after it shall be constructed, and where such contracts otherwise comply with appropriate provisions of law.
"It is, therefore, considered, ordered and adjudged as follows:

"I
"That the defendants, H.M. Lewis, Rea Steele, Doyle Koon, L.T. Byrd and Casper E. Harris, as and constituting the Commissioners of the Housing Authority of the City of Panama City, Florida, and their successors in office be, and they are hereby enjoined and restrained from entering into any contracts, understandings or agreements with the authorities of the United States Navy for the furnishing of housing accommodations for Naval personnel, *491 provided, however, that nothing herein in this part contained shall prohibit the renting of any housing unit within a housing project of the Panama City Housing Authority to any member of the United States Navy or civilian personnel of the United States Navy who meet the requirements of the low rent housing statute.

"II
"The said defendants, and each of them, and their successors in office, are further enjoined and restrained from entering into any contracts, understandings or agreements with any private person or corporation for the leasing or sale of the property described in the Bill of Complaint commonly known as Maritime No. 1 to such private person or corporation for the construction of houses thereon. Provided, however, that nothing in this part contained shall prevent these defendants from entering into a contract for the construction of residential units for persons of low income, where such private person or corporation has no ownership or control over the same after it shall be constructed.

"III
"It is further ordered that the temporary restraining order and injunction made and entered in this cause on the 6th day of February, 1953, be, and is hereby dissolved and the injunction bond filed as a condition for the issuing of said order be, and is hereby, cancelled and the sureties thereon hereby discharged from their obligation and understanding.

"IV
"That the defendants be, and they are hereby ordered to forthwith pay over unto the Plaintiff the costs of these proceedings which are hereby taxed as follows:

 Clerk's costs $10.00
 Sheriff's costs 25.06
 Witness fees 4.50
 Court Reporter's per diem 30.00"

This litigation had its inception in an effort by the Commanding Officer of the Navy Mine Countermeasurers Station of the United States Navy located at Panama City, Bay County, Florida, to do as he testified: "Improve the housing situation for the military personnel in my command, I sought the assistance of the Panama City Housing Authority." This was the result of "a long standing request initiated by his predecessors some 4 or 5 years ago to assist the members of his command in acquiring low rental housing while on duty there."
But it appears that the Navy itself would not enter this field (buy land and erect housing thereon) since there was "no urgent military reasons present" necessary for such participation. Approach was made to the Housing Authority of Panama City, Florida, that it acquire property there known as Maritime No. 1 project and after such acquisition to turn the land over to private sources for the building of the necessary units (estimated from 200 to 600 as the number necessary) which eventually would come under the control and ownership of such private operators who in the first instance would provide the necessary finances therefor. In a series of conferences and exchange of letters between the Authority and the Commanding Officer of the Navy Unit described, a tentative agreement was reached subject to certain minor details to be disposed of later, and it was at this juncture that the appellee (plaintiff below) filed his bill of complaint for injunction against the appellants, constituting the Commissioners of the Housing Authority of the City of Panama City, Florida, in which appellee sought to enjoin (a) acquisition of the land by the Authority, and (b) permanent restraining order prohibiting the erection of the housing units for the Navy or anyone else, as described.
As stated, the chancellor denied the motion to dismiss, required the filing of an answer and testimony was taken before him and made a part of the record. Upon such testimony and the pleadings as described, he entered the final decree of injunction recited above.
Two questions are presented but only one needs to be answered and that is whether the appellants have the authority under the law under which it operates to acquire property and then turn it over to private interests for development. It is true that *492 the ends desired in this proceeding were just, honorable, and as a matter of fact desirable, but we must determine whether or not it was lawful under the circumstances.
Appellants derived their authority from sections 421.27 to 421.45, Florida Statutes Annotated. The basic Housing Authority law was contained in chapter 17981, Acts of 1937. This was amended in minor details, and now comprises sections 421.01 to 421.23, Florida Statutes Annotated. Supplementing the 1937 act, the Legislature in 1941 passed chapter 20221, Laws of Florida, Acts of 1941. This is now found in sections 421.37 to 421.45, Florida Statutes Annotated.
In 1945 the Legislature enacted chapter 23077, Laws of Florida, Acts of 1945, F.S.A. § 421.08 note, to apply to housing authorities in municipalities of 60,000 or more inhabitants.
In 1949, Laws of Florida, Acts 1949, Ex. Sess., c. 26362, the Legislature amended the 1945 act just described in the preceding paragraph by authorizing the clearing of blighted areas by housing authorities in cities of not less than 14,000 population. The above recitation constitutes the statutory authority for housing commissions in the state in various population brackets of the same.
It is significant in the determination of this cause to quote from the testimony by Mr. Gardner E. Dickinson, Sr., the executive director and secretary of the Housing Authority of the City of Panama City (appellants here), as follows:
"Q. In your discussions with Mr. Lewis and other members of the Housing Authority along the lines of your attempt to help the Navy to acquire this housing, was there ever any discussion of the authority itself building these houses for the Navy? A. No sir. I am certain that I have not, though most of these gentlemen are business men  all of them are business men that comprise the Authority. They know we have no legal right to build other than low-rent housing  low rent public housing.
"Q. Then all of your exploring, as you call it, was with the idea of turning this land over to a private concern to finance these houses? A. Well, that is probably what would have happened if we were legally able to do so."
There is no question that the appellee had the right to institute this suit as a resident taxpayer to enjoin the illegal act of a statutory commission in the expenditure of public funds which he in common with other property owners and taxpayers might otherwise be compelled to contribute to or pay. Crawford v. Gilchrist, 64 Fla. 41, 59 So. 963, Ann.Cas. 1914B, 916, and authorities therein cited.
If the acts complained of were unauthorized and not within the powers of the board and tended to produce a resulting injury of the plaintiff by increasing the burden of his taxes, he certainly has a right to maintain this action. Richman v. Whitehurst, 73 Fla. 152, 74 So. 205, and authorities therein cited. Hathaway v. Munroe, 97 Fla. 28, 119 So. 149. In Wester v. Belote, 103 Fla. 976, 138 So. 721, 726, this Court said: "Citizens and taxpayers, when suing as such, undoubtedly have the right to injunctive relief to protect the public treasury against illegal disbursements of public funds * * *." See authorities cited in said opinion. See also City of Daytona Beach v. News Journal Corporation, 116 Fla. 706, 156 So. 887.
One of the most valuable phases of injunctions is to prevent an injury from occurring and not to be forced to wait until after the damage is done and then attempt to seek redress for the same. Smith v. Davis, 22 Fla. 405; Godwin v. Phifer, 51 Fla. 441, 41 So. 597; Wilkinson v. Woodward, 105 Fla. 376, 141 So. 313; Davis v. Wilson, 139 Fla. 698, 190 So. 716.
In the case of Rorick v. Board of Commissioners of Everglades Drainage District, D.C., 27 F.2d 377, 382, the Federal Court said:
"It is a futile contention to say that the plaintiffs' bill has been prematurely brought, and that plaintiffs must wait until the drainage district board has refused to *493 keep up the sinking fund, or until such fund has been actually impaired, or until the drainage district has actually defaulted in the payment of the plaintiffs' bonds and coupons. The correct principle, and applicable here, is that the plaintiffs need not wait until the injury is accomplished before bringing suit, but may ask, as being timely, injunctive relief to prevent the threatened injury."
Here the issues are clearcut. The learned chancellor decreed and rightly so, that the appellants had the authority to purchase the land and so stated in his decree. He also provided that this land could be used by the appellants as they were authorized so to do under the law, but he specifically enjoined them from carrying out their obvious intent to make the land available for private interests to finance and build. From a reading of the record there is no doubt that with a few contingencies to be settled and agreed upon, an agreement would have been entered into with the appellants and the Navy for the required housing. However laudable the proposition may be, and it certainly should be the duty and responsibility of everyone interested in the defense of our country to provide all necessary means to accomplish that end, we must still adhere to the law and failing so to do, we weaken ourselves within by seeking to strengthen ourselves from assault without.
Military housing is a must, and should have priority. It is true that legally we are not engaged in a war as courts view it, and upon which contingency some acts of the Legislature in this field depend, Section 421.38, Florida Statutes Annotated, yet we cannot blindly close our eyes to the gigantic and deadly struggle in which the whole world is engaged in the so-called cold war for power and domination of the peoples (free or otherwise) of the world, nor can we close our ears to the booming guns, the whine of the shells, the roar of the planes, the chatter of the machine guns, the filth, the dirt, the exhaustion, the suffering, the wounds, the blood, and the dying of our men, and the expenditure of costly material on the battle fronts of Korea, where they gallantly, without thought of cost, defend us, our loved ones and our way of life, and our great Nation from the fanatical assaults of those who would take from us that which we value above life itself, liberty and freedom under our Constitution.
Legal war or not, we must use every means to prepare and marshal our resources to meet and defeat the ugly threat of the communistic cloud that threatens to encompass us and the whole world.
Appellants here are to be commended for their activities in this matter and not condemned. They were acting in the best interest of our country, and those who opposed them with such vigor, have no cause to inject in this record nor anywhere else the cry of "socialism," "welfare state" or anything of like nature. Appellants saw a need and acted to answer it. They attempted to use the means provided by the Legislature to do so in a properly enacted statute. They were hopeful it was legal. And through the orderly process of fair and impartial judicial determination of the state, it turned out that it was not, through the fault of no one. Would more citizens be as alert to the needs of our country as the members and officers of the Housing Authority of Panama City, Florida, proved to be in this case.
But under the ruling of this Court in the case of Adams v. Housing Authority of City of Daytona Beach, 60 So.2d 663, appellants must be denied the privilege of proceeding with their plans to allow private interests to finance and control the proposed naval low rent housing project.
In this case (Adams v. Housing Authority of City of Daytona Beach, supra) the court held that a statute which authorized the taking of private property for private use and authorized expenditure of public funds for private purpose and authorized appropriation of public funds for private gain and profit violated the Constitution of Florida. And of the same tenor see the recent case of State v. Town of North Miami, Fla., 59 So.2d 779, 787.
If the Authority (appellants) can do it as the body politic that it is, and retain control of same after completion, and keep *494 it a public project from start to finish, that certainly is within its jurisdiction and powers. Not only that, but it would be its duty to do so, and as promptly and as expeditiously as possible, under the circumstances, and as the necessity therefor required.
Affirmed.
ROBERTS, C.J., and TERRELL and MATHEWS, JJ., concur.