426 So.2d 1084 (1983)
Norman T. GODHEIM, a Taxpayer and Resident of the City of Tampa, Appellant,
v.
CITY OF TAMPA, a Municipal Corporation under the Laws of the State of Florida, and Waste Management, Inc., Appellees.
No. 82-1845.
District Court of Appeal of Florida, Second District.
January 28, 1983.
*1085 John R. Bush of Bush, Ross, Gardner, Warren & Rudy, Tampa, and J. Rex Farrior, Jr. and John H. Rains, III, of Shackleford, Farrior, Stallings & Evans, P.A., Tampa, for appellant.
Joseph G. Spicola, City Atty., and Thomas T. Steele of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., Tampa, for appellee City of Tampa.
H. Lee Moffitt and Debra L. Romanello of Moffitt, Hart & Miller, Tampa, for appellee Waste Management, Inc.
GRIMES, Judge.
This is an appeal from a judgment which dismissed a taxpayer's action against the City of Tampa for lack of standing.
Appellant, a citizen and taxpayer of the City of Tampa, brought a declaratory action seeking to enjoin the city from entering into a contract with Waste Management, Inc., for the design, construction and operation of a solid waste disposal and resource recovery facility. The complaint alleged that in awarding the contract to Waste Management, Inc., the city had violated the competitive bidding requirements of its own municipal ordinance as well as the Consultants Competitive Negotiation Act, section 287.055, Florida Statutes (1981), and the Sunshine Law, section 286.011, Florida Statutes (1981). The city responded that because of the urgent need for the facility, it did not have time to follow the ordinary procedure of selecting an engineering firm, preparing design specifications and obtaining competitive bids. Therefore, it purported to rely upon an emergency provision of its ordinance to suspend the requirements of competitive bidding. The city argued that the procedure it followed in requiring the only two vendors interested in the job to submit their own specifications and in conducting simultaneous confidential negotiations with these vendors was calculated to obtain the best competitive offer in the shortest reasonable time. Waste Management, *1086 Inc., was allowed to intervene as a party defendant. Thereafter, the court dismissed the suit on the premise that appellant did not have the requisite standing to bring the action.
Florida has a checkered history concerning the requirements for standing to bring a taxpayer's suit. Early decisions upheld the right of a taxpayer to sue to enjoin an illegal disposition of public funds. Anderson v. Fuller, 51 Fla. 380, 41 So. 684 (1906); Peck v. Spencer, 26 Fla. 23, 7 So. 642 (1890). The supreme court next dealt with the question of taxpayers' standing in Rickman v. Whitehurst, 73 Fla. 152, 74 So. 205 (1917). From this case evolved certain principles which some courts have referred to as the Rickman rule. In Rickman, the plaintiff was a taxpayer of DeSoto County and the owner of real estate situated within the Punta Gorda Special Road and Bridge District which was within the county. The legislative enactment which had established the district required all road and bridge construction work to be let by contract to the lowest bidder. The county commissioners and bond trustees used day labor for the road and bridge work, so the plaintiff sought to enjoin the unlawful disbursement of public funds. In the course of concluding that the suit was properly dismissed for lack of standing, the court stated:
The principle is universally recognized that to entitle a party to relief in equity he must bring his case under some acknowledged head of equity jurisdiction. In a case where a public official is about to commit an unlawful act, the public by its authorized public officers must institute the proceeding to prevent the wrongful act, unless a private person is threatened with or suffers some public or special damage to his individual interests, distinct from that of every other inhabitant, in which case he may maintain his bill.
73 Fla. at 158, 74 So. at 207.
Notwithstanding Rickman, the supreme court in several later cases permitted the maintenance of taxpayers' suits without requiring a showing that the plaintiff had suffered a special injury different from that of other taxpayers. Wester v. Belote, 103 Fla. 976, 138 So. 721 (1931); Robert G. Lassiter & Co. v. Taylor, 99 Fla. 819, 128 So. 14 (1930); Hathaway v. Munroe, 97 Fla. 28, 119 So. 149 (1929); cf. City of Daytona Beach v. News Journal Corp., 116 Fla. 706, 156 So. 887 (1934) (taxpayer was also a competitor). A number of district court of appeal decisions also authorized taxpayer suits without proof of special injury. Hunter v. Carmichael, 133 So.2d 584 (Fla. 2d DCA 1961); Ashe v. City of Boca Raton, 133 So.2d 122 (Fla. 2d DCA 1961); Robinson's, Inc. v. Short, 146 So.2d 108 (Fla. 1st DCA 1962); R.L. Bernardo & Sons, Inc. v. Duncan, 134 So.2d 297 (Fla. 1st DCA 1961); cf. Krantzler v. Board of County Commissioners, 354 So.2d 126 (Fla. 3d DCA 1978) (purporting to rely in part on Rickman for the proposition that no special injury need be shown).
The next turn of the wheel occurred in Department of Administration v. Horne, 269 So.2d 659 (Fla. 1972), in which taxpayers attacked the constitutionality of various provisions of the general appropriations act. The Department of Administration asserted that the plaintiffs had no standing because they were challenging appropriations rather than expenditures. The court rejected this distinction by explaining that once an appropriation is made, an expenditure will follow administratively as a matter of course. The court then turned to an analysis of Rickman v. Whitehurst:
Essentially, the "Rickman Rule" requires a showing of special injury. We find, however, that the instant case presents a valid exception to the so-called "Rickman Rule." Appellees have alleged the unconstitutionality of certain sections of an appropriations act. These sections are said to be violative of constitutional provisions which place limitations upon enacting legislation regarding state funds. We hold that such allegation in this narrow area satisfies the requirement for "standing" to attack an appropriations act.
*1087 269 So.2d at 662 (footnote omitted). The court based its "exception" to the Rickman rule upon Flast v. Cohen, 392 U.S. 83, 88 S.Ct. 1942, 20 L.Ed.2d 947 (1968), in which the United States Supreme Court had recently held that federal taxpayers had standing to challenge the validity of a federal spending program upon constitutional grounds.
In 1979, the Third District Court of Appeal in Paul v. Blake, 376 So.2d 256 (Fla. 3d DCA 1979), relied upon Horne and Rickman to deny taxpayers' standing to challenge, except upon constitutional grounds, the granting of tax exemptions to certain leasehold interests in governmentally owned real property at the Miami International Airport. In referring to the Rickman rule, the court said:
This rule is based on the sound policy ground that without a special injury standing requirement, the courts would in all likelihood be faced with a great number of frivolous lawsuits filed by disgruntled taxpayers who, along with much of the taxpaying public these days, are not entirely pleased with certain of the taxing and spending decisions of their elective representatives. It is felt that absent some showing of special injury as thus defined, the taxpayer's remedy should be at the polls and not in the courts. Moreover, it has long been recognized that in a representative democracy the public's representatives in government should ordinarily be relied on to institute the appropriate legal proceedings to prevent the unlawful exercise of the state or county's taxing and spending power.
376 So.2d at 259. The court then noted the exception to the special injury standing requirement when the suit is premised on constitutional grounds and concluded by saying:
We recognize that all these standing rules are based on highly debatable policy choices, but they represent, in our view, a reasonable effort to guarantee that the state and counties lawfully exercise their taxing and spending authority without unduly hampering the normal operations of a representative democratic government. We adhere to these rules today because they are based on long-established precedent and seem both reasonable and fair.
376 So.2d at 259-60.
The supreme court once again addressed the subject in Department of Revenue v. Markham, 396 So.2d 1120 (Fla. 1981), and held that one suing in the capacity of a citizen and taxpayer did not have standing to seek a determination of whether household goods of nonresidents were subject to taxation. The court reasoned:
The complaint for declaratory relief contained no allegation of any special injury, and it did not attack the constitutionality of the taxing statutes in question. It has long been the rule in Florida that, in the absence of a constitutional challenge, a taxpayer may bring suit only upon a showing of special injury which is distinct from that suffered by other taxpayers in the taxing district.
396 So.2d at 1121.
The appellant makes a plausible argument that the holding of Rickman v. Whitehurst has been misinterpreted. For example, the Rickman court may have only concluded that the taxpayer had no standing because there was no allegation that the cost of building the roads and bridges by day labor would exceed the cost of construction through competitive bidding; thus, there was no threat of increased taxation. At this point, however, it makes no difference that others might read Rickman in a different light. The supreme court has, in fact, unmistakably interpreted Rickman to mean that the plaintiff must show a special injury different from other taxpayers in order to have standing to bring a taxpayer's suit. The court obviously believed this to be the law when it decided Department of Administration v. Horne because otherwise there would have been no need to make an exception to the special injury requirement in cases involving constitutional challenges. If there was any remaining uncertainty, it was disspelled in *1088 Department of Revenue v. Markham when the supreme court quoted with approval from that portion of Paul v. Blake which set forth the policy grounds for the special injury standing requirement. The subsequent case of Glatstein v. City of Miami, 399 So.2d 1005 (Fla. 3d DCA 1981), can only be explained if it be assumed that the standing question was never raised.
The dissenting opinion advances some good reasons why a taxpayer should always be permitted to attack the legality of a governmental action which increases his tax burden, but these are the same reasons which made the adoption of the special injury standing rule the highly debatable policy choice referred to in Paul v. Blake. The language of Department of Administration v. Horne and Department of Revenue v. Markham clearly indicates that the supreme court intended to impose the special injury standing requirement upon all taxpayer suits except where constitutional issues are involved.
In view of the fact that the appellant failed to allege a special injury or assert a constitutional challenge, the only remaining issue in this appeal is whether the city violated the Sunshine Law, section 286.011, Florida Statutes (1981). This statute, on its face, gives the appellant standing without regard to whether he suffered a special injury. Appellant contends that the negotiation meetings conducted by city staff members with the two competing vendors were required to be held in public. No elected official took part in any of these meetings, though the mayor did exercise supervision over the negotiating team. The ultimate decisions concerning the procedures to be followed and the award of the contract were made by the city council in open meetings.
In Occidental Chemical Co. v. Mayo, 351 So.2d 336 (Fla. 1977), the supreme court held that meetings of the staff of the Public Service Commission to prepare a comprehensive rate proposal which was later summarily adopted by the commission did not violate the Sunshine Law. The Attorney General has expressed the opinion that the Sunshine Law did not apply to meetings of the Department of Health and Rehabilitative Services staff committees held for the purpose of evaluating bids and negotiating proposed contracts with winning bidders. 1981 Op.Att'y Gen.Fla. 081-51 (July 8, 1981). In the same vein, we do not believe that the negotiation meetings of the city's staff were governed by the provisions of section 286.011.
This is not a case like News-Press Publishing Co. v. Carlson, 410 So.2d 546 (Fla. 2d DCA 1982), in which this court deemed a public hospital's staff budget committee to be the equivalent of the governing board for purposes of the Sunshine Law.
Accordingly, we affirm the court's order of dismissal.
BOARDMAN, A.C.J., concurs.
LEHAN, J., dissents with opinion.
LEHAN, Judge (dissenting).
At the outset it seems important to be clear as to what this appeal does and does not involve. In short, it does involve the issue of whether plaintiff has standing to sue. It does not involve the merits of the suit.
As to the standing issue, the essential facts are those pleaded in plaintiff's amended complaint. Plaintiff, as a taxpayer, alleges that a substantial contract for the project known as the "McKay Bay Refuseto-Energy Facility" was awarded by the City of Tampa to a company (Intervenor, Waste Management, Inc.) without compliance with, and in violation of, the Charter of the City of Tampa and the statutory law of Florida requiring the award of such contracts to the lowest responsible bidder only after open, competitive bidding. Plaintiff-taxpayer alleges that those violations of law will result in higher taxes (and, implicitly, that as a taxpayer his burden of taxation necessarily will be increased) because the cost of the contract was greater than if those laws had been complied with.
The issue here is whether plaintiff has standing to sue, i.e., to litigate those allegations in court.
*1089 I do not reach, nor do I believe it is appropriate to consider at this stage, the validity of the response of the City of Tampa to certain of those allegations as outlined in the second paragraph of the majority opinion herein, i.e., that the city was justified in failing to follow strictly those competitive bidding laws due to other provisions of law suspending requirements of open, competitive bidding under emergency conditions and that the procedure followed by the city resulted in the best competitive price in the shortest reasonable time. The city's response consists simply of allegations which, at this stage of the suit, are not before this court for consideration on appeal. The validity of those allegations would be the subject of litigation on the merits which, however, was foreclosed by the trial court's ruling which is on appeal here. That ruling dismissed the suit on the sole grounds of lack of standing of plaintiff-taxpayer to sue.
If, as the city apparently alleges, plaintiff and other taxpayers were not hurt in that the tax burden was not increased by the procedures under which the city awarded the contract or if the procedures actually did comply with applicable law, those would be matters to be determined at trial on the merits. But for present purposes the allegations of the complaint must be taken as true.
The result of the majority holding is that the actions of governmental officials are free from judicial scrutiny. Accordingly, under that holding it was probably helpful to include in the majority opinion a resume of the city's position in order to make it clear that those actions did not appear to have been taken in an entirely arbitrary fashion, something which I understand that appellant does not question. Nonetheless, under either view of this case  that of the majority or that of this dissent  plaintiff's allegations are in issue and the city's position is, again, not relevant to a determination of this appeal.
What is before this court on appeal is solely the important legal question of whether a taxpayer, under the circumstances alleged in the complaint, has the right to question in court the legality of actions of a governmental body.
The majority opinion relies upon the so-called "Rickman Rule" as requiring that a taxpayer show "special injury" which is different from that suffered by any other taxpayer. The majority finds that plaintiff has not alleged special injury and therefore does not have standing to bring this suit. However, the majority does not explain that the special injury requirement of the Rickman rule, as interpreted by the majority, actually means under the circumstances of this case that a taxpayer can never show that the unlawful expenditure of public funds causes injury to him different from that caused to other taxpayers. The majority does not explain that as a result, such a taxpayer never has standing. I would reverse on the basis that Rickman v. Whitehurst, 73 Fla. 152, 74 So. 205 (1917), has a different and more meaningful application which would permit standing to sue under the facts of this case.

1. The "Rickman Rule" Should Not Absolutely Prevent A Suit Of The Type Involved Here.

The issue is whether a taxpayer who alleges that his tax burden is increased by an unlawful act of a governmental body has standing to sue. There are three possible answers: (1) The taxpayer does not have standing; (2) he does have standing; or (3) he has standing only under certain circumstances. The majority opinion wording holds, as did the trial court, that the third answer is correct. Under the reasoning of the majority, a taxpayer can sue only if he can show "special injury" distinct from that of every other taxpayer, or if the issue involves constitutional questions as in Department of Administration v. Horne, 269 So.2d 659 (Fla. 1972).
On the other hand, appellant asserts that such a position is contrary to Florida case law and actually places the taxpayer into the first of the above categories (no standing) because a taxpayer will not have an injury different from other taxpayers except *1090 in very rare circumstances. For example (and probably the only example), in a case like the instant suit, involving an alleged increased tax burden through the awarding of a substantial contract without competitive bidding, "special damages," as so defined by the majority opinion herein, could be that suffered by another competitor who was not awarded the contract and who also happened to be a taxpayer, as in City of Daytona Beach v. News Journal Corp., 116 Fla. 706, 156 So. 887 (Fla. 1934).
I am inclined to agree with the substance of appellant's position. A particular taxpayer's burden from increased taxes is never, in the broad sense implicitly required by the majority opinion, wholly "distinct" from that of other taxpayers because, of course, our governmental bodies do not single out a particular individual for taxation. If the "special injury" rule, as so defined, were to restrict taxpayers' remedies, the peculiar result would be that a taxpayer-resident who is the loser of a contract awarded to another as a result of unlawful governmental action has a remedy, but that there is no remedy if that loser does not happen to be a resident. I would not restrict such right of suit to the fortuitous fact situation where a competitor who does not receive the contract happens to be a taxpayer. The competitive bidding laws were not enacted to protect a losing competitor but were to protect all taxpayers.
It does not seem to me that the plaintiff in this case is any less entitled to standing than plaintiffs who have been allowed standing in a number of the District Courts of Appeal cases cited in the majority opinion, e.g., Hunter v. Carmichael, 133 So.2d 584 (Fla. 2d DCA 1961); Robinson's, Inc. v. Short, 146 So.2d 108 (Fla. 1st DCA 1962); R.L. Bernardo & Sons, Inc. v. Duncan, 134 So.2d 297 (Fla. 1st DCA 1961); and Krantzler v. Board of County Commissioners, 354 So.2d 126 (Fla. 3d DCA 1978).
Accordingly, in the final analysis, the so-called "special injury" test as applied by the majority here is an essentially illusory test. Although it purports to restrict a remedy, it in fact prevents a remedy (except in the fortuitous fact situation referred to above), absent constitutional violations.
I would not think it necessary, under my view of the law as outlined in this dissent, to reach what might perhaps be the next logical question: Whether the absolute prevention of such a remedy for a legal wrong is a function of the judiciary or, on the other hand, must rest in the legislative branch within constitutional limitations. Certainly no holding of the Florida Supreme Court to which we have been cited purports to prevent absolutely a remedy where taxes would be allegedly increased through unlawful governmental action.
If the law is that a taxpayer-plaintiff must, in order to have "standing," be able to show something which no such plaintiff as a practical matter can show, then the law is something less than meaningful. Or, in the words of Dickens, "`If the law supposes that,' said Mr. Bumble, `the law is a ass  a idiot.'" (Oliver Twist). But the law is meaningful, as I know the majority agree, and to prevent it from being otherwise, I feel we must construe the Florida supreme court cases of Rickman, supra; Department of Revenue v. Markham, 396 So.2d 1120 (Fla. 1981), and Horne, supra, all cited in the majority opinion, as espousing and preserving a meaningful "special injury" test in taxpayer suits. To find a meaningful such test we need look no further than Rickman for the construction of "special injury."

2. The "Rickman Rule" Does Permit Standing To Sue In This Case

The underlying premise adopted by the trial court and by the majority opinion is that Rickman (and, accordingly, the "Rickman Rule" referred to in subsequent cases) requires a showing in taxpayer suits of plaintiff's "special injury" which is "distinct from that of every other inhabitant." But I do not read Rickman as necessarily restricting all taxpayers' suits to such "special injury" situations if "special injury" is to be strictly so defined. In fact, language in Rickman, in seeming contradistinction to the foregoing absolute "special injury" requirement derived from Rickman, specifically *1091 says that a taxpayer does have a remedy if he alleges an increased tax burden resulting from an unlawful governmental action. That language appears literally to give standing to the plaintiff in the instant suit:
In the first place complainant has the right to maintain the bill if the acts complained of were unauthorized and not within the powers of the board of county commissioners, and tended to produce a resultant injury to the complainant by increasing the burden of his taxes. The right of a citizen and taxpayer to maintain a suit to prevent the unlawful expenditure by public officials of public monies, unless otherwise provided by legislative enactment, is generally recognized. The nature of the powers exercised by county commissioners who are vested by law with the power of levying taxes for county purposes and the expenditure of county funds, the danger of the abuse of such powers which are delegated to them by legislative enactment and the necessity for prompt action to prevent their flagrant abuse and irremedial injuries flowing therefrom would seem to fully justify courts of equity in interfering upon the application of a county taxpayer and citizen... . The principle on which the right rests is that the taxpayer is necessarily affected and his burden of taxation increased by an unlawful act of the county commissioners which may increase the burden to be borne by the taxpayers of the county, and no relief from such injury is obtainable elsewhere than in a court of equity.
74 So. at 207 (emphasis added).
The answer, it seems to me, lies in the proper definition of "special injury" to be used in these cases. Further on in the Rickman opinion, the term "special injury" seems to be specifically defined as including injury arising from an increased tax burden:
We have ... found no case in which such a suit has been maintained where it did not appear that special injury would result to the complainant as a taxpayer in the increased public burden as the result of the unauthorized act.
74 So. at 207 (emphasis added). The seeming dichotomy: How can there be such an increased "public" tax burden which is "distinct" in nature from that suffered by other taxpayers? The answer is that there cannot be. Thus, the "special injury" of the taxpayer is his share of the increased public tax burden. This conclusion is not only buttressed by, but seems inevitable from, the Rickman court's use of the word "his" as emphasized in the first quotation above.
To be sure, the short Rickman opinion does not make easy reading. But it seems to me that the key to eliminating judicial acrobatics from Rickman is to read the plain meaning of the entire Rickman opinion in such a way as to avoid seeming inconsistencies and to reconcile all language therein. The only way to do that is to not take the so-called "special injury" rule of the Rickman case at face value as applying to all taxpayer suits, but to construe Rickman as applying the "special injury" rule to some situations and not to others. This had to be what Justice Ellis meant in Rickman when he said, immediately after saying that a taxpayer suffering from an increased tax burden has standing, that "the right of the complainant to maintain this suit therefore would seem to depend upon the peculiar injury which may result to him... ." Id. at 207 (emphasis added). That is, in Rickman the complainant did not show increased taxes and "therefore" did not show "peculiar injury." Consequently, under Justice Ellis' opinion, the complainant in that suit would have had to have shown some other type of peculiar injury" contradistinguished from that of all other taxpayers or citizens who are not taxpayers." Id. at 207.
Stated another way, the teachings of Rickman are that unless a taxpayer complaining of an unlawful governmental action suffers from an increased tax burden, he must show special injury. As Justice Ellis' opinion then goes on to show, the Florida Supreme Court was not willing to give a taxpayer standing to sue on the *1092 "mere abstract conception" of an unlawful act by a governmental body. Id. at 207. The taxpayer must show either increased taxes or special injury.
In my view, the true "Rickman Rule," based upon a reading of the whole Rickman opinion as being entirely consistent and not ignoring any portion thereof, is:
(1) A taxpayer has standing to sue for an unlawful governmental act which increases his tax burden.
(2) If a taxpayer cannot show such increased tax burden from such unlawful act, he must show either
(a) some other special injury distinct from that suffered by others, or
(b) that the action taken by the governmental body was unconstitutional.
Otherwise, any relief must come either at the ballot box or from a lawsuit brought by some other public officer. As to a taxpayer having standing if he shows either an unlawful tax increase or some other special injury distinguishable from that suffered by others, see Ashe v. City of Boca Raton, 133 So.2d 122, 124 (Fla. 2d DCA 1961).
If the Florida Supreme Court really meant in prior case law to prevent taxpayers' suits, absent allegations of constitutional violations, I would say so and leave it at that. I would not muddy the waters by using under the instant facts a sole, illusory rationale that the taxpayer simply has shown no "special injury."
But I am not at all convinced that the Florida supreme court has ever meant to foreclose remedies of taxpayers in that manner. In fact, in Rickman, which has formed the foundation for subsequent case law in this area, it seems clear that the supreme court meant to preserve a taxpayer remedy under circumstances not involving constitutional violations. The court in that case said that a taxpayer suffering an increased tax burden due to an unlawful governmental act would have standing to sue, but that the taxpayer in that case did not either suffer an increased tax burden or any other special injury, and therefore the dismissal of the suit was affirmed.

3. Other Florida Case Law Has, With Consistency, Upheld The Standing Of A Taxpayer Under The Instant Circumstances.

An underlying thesis of the majority opinion is that the history of Florida case law on this subject shows diverse results at different time periods over the years. But I believe Florida Supreme Court law on the subject can be viewed as having been consistent over the years.
As shown above in this dissent, Rickman supports the proposition that a taxpayer suffering from increased taxes through an unlawful act of a governmental body has standing to challenge that act. Such construction appears to bring the Florida Supreme Court cases cited by the majority into consistent accord. As the majority opinion recognizes, the pre-Rickman cases of Anderson v. Fuller, 51 Fla. 380, 41 So. 684 (1906), and Peck v. Spencer, 26 Fla. 23, 7 So. 642 (1890), recognize taxpayers' standing to sue, as do the post-Rickman cases of Wester v. Belote, 103 Fla. 976, 138 So. 721 (1931); Robert G. Lassiter & Co. v. Taylor, 99 Fla. 819, 128 So. 14 (1930), and Hathaway v. Munroe, 97 Fla. 28, 119 So. 149 (1929). Unlike the majority opinion, I do not find it necessary to say that the Wester, Lassiter and Hathaway results were reached "notwithstanding Rickman." To the contrary, under my foregoing construction of Rickman, those results were fully consistent with Rickman.
This construction of Rickman seems consistent, or at least not inconsistent, with the Florida Supreme Court's most recent pronouncement on the subject in Markham, supra, as is shown by an analysis of what Markham did not involve and what it did involve. Markham did not necessarily involve an alleged increased tax burden through governmental action; to the contrary, the plaintiff property appraiser in Markham, by trying to prevent taxation of non residents' property, was trying to prevent a reduction of his own tax burden which, of course, was a part of overall gross tax revenues. What Markham did involve was principally the adoption by the Florida *1093 Supreme Court of the dissent in the prior district court of appeal opinion in that case. 381 So.2d 1101, 1111. That dissent said that no one, except the property appraiser himself, was challenging as wrong his own action of taxing non residents' property and that he could not have a justiciable controversy with himself.
[A] public official is allowed standing when "willing to perform his duties, but ... prevented from doing so by others."
381 So.2d at 1112. To say that there was no controversy was simply another way of saying that the plaintiff in that case, accordingly, did not show injury, much less special injury, because Mr. Markham was not one of those actually "aggrieved" by the tax. 396 So.2d at 1122. Also, Markham, while generally applicable in principle, did not involve facts like those in the instant case relative to the paying out of public monies upon an allegedly unlawful contract.
Accordingly, Markham is entirely consistent with Rickman in that both cases involved lack of standing on the part of a plaintiff who did not allege an increased tax burden, in contrast to taxpayer-plaintiff in the instant case.
As to the other post-Rickman supreme court case on the subject, Department of Administration v. Horne, supra, I would not, as the majority does, view it necessarily as "the next turn of the wheel" but only as another supreme court case basically consistent with the teachings of Rickman. The Rickman opinion itself specifically notes that the plaintiff therein did not attack the validity of the bond issue involved nor the propriety of the expenditure of funds for road and bridge construction. What the plaintiff attacked was the failure of the county commissioners to let a contract for road and bridge construction to the lowest contract bidder, as allegedly required by a special act creating a road and a bridge district; instead, the county commissioners did the work themselves, with purchased equipment and day labor, at a cost lower than that obtainable through contractors. In Horne, on the other hand, the taxpayer did attack the constitutionality of the governmental acts in question. To be sure, the supreme court in Horne did refer to such a constitutionality attack as an "exception" to the so-called "Rickman Rule" requiring a showing of special injury. Appellees in the instant case ably argue that since plaintiffs in Horne had otherwise shown an increased burden of taxation due to alleged illegal expenditures, there would have been no need for a constitutional "exception" to the "Rickman Rule" if the existence of an increased tax burden had been enough by itself to invoke standing. However, while I do agree that the use of the word "exception" in Horne lends support to appellees' argument and that of the trial court and the majority opinion herein, I believe that Horne simply represents a logical extension of Rickman under the foregoing specific language of Rickman. To the extent that Horne is an exception to Rickman it is only an exception to the portion of the Rickman case which requires special injury other than that represented by a taxpayer's increased tax burden (i.e., the (2)(a) portion of what I have expressed above as the "true Rickman Rule").

4. There Has Been No Change By The Florida Supreme Court To The Law Applicable Under The Instant Facts.

It would appear that the majority opinion, in affirming the trial court, employs certain language from Horne, and the subsequent Markham case, to perceive a change in the principles of Rickman because of the use by the supreme court in Horne and Markham of certain isolated language from Rickman and its use in Markham of certain policy language from Paul v. Blake, 376 So.2d 256 (Fla. 3d DCA 1979). I do not believe, however, that there should be such a change in those Rickman principles which permits a suit by a taxpayer based upon allegations and showing of an increased tax burden caused by an unlawful governmental act. Also, absent clear direction to that effect from the supreme court and certainly absent clearer signals than are contained in the Horne and Markham cases considered against their respective factual backgrounds, I do not believe the Horne and *1094 Markham cases, upon analysis, intended such a basic change.
The sharp contrast between prior Florida law and any such perceived change is illustrated by the following statements of the Florida supreme court in Wester v. Belote, supra, quoted with approval in City of Daytona Beach v. News Journal Corp., supra (which concerned violations of competitive bidding laws):
Citizens and taxpayers, when suing as such, undoubtedly have the right to injunctive relief to protect the public treasury against illegal disbursement of public funds which it is charged will result from the carrying out of an unauthorized or illegal contract... .
156 So. at 889.
What then are the holdings of Horne and Markham? Appellees argue that in Horne "the court clarified previous case law and found that the `Rickman Rule' of special injury will apply in all [emphasis added] cases where the taxpayer challenges the legality of the government's exercise of the taxing and spending authority unless the challenge is based on constitutional grounds, in which case no showing of special injury will be required." I have emphasized the word "all" because whether that word is applicable is the fundamental question. As noted further above, appellees logically argue that such a view of Horne is necessary because in Horne the supreme court referred to the existence of a constitutional violation as an "exception" to the special injury rule and, appellees argue, there would have been no need for an "exception" unless the special injury rule did not otherwise permit the suit. Since the special injury definition of Rickman permitting taxpayer suits on the basis of an alleged increased tax burden caused by unlawful governmental acts, as referred to hereinabove, would have permitted standing of plaintiffs in Horne, appellees' underlying logical conclusion is that the supreme court in Horne meant to disavow that Rickman view of special injury.
However, the foregoing last link in appellees' chain of logic is based upon the assumption by appellees that Horne necessarily involved allegations of an increased tax burden through unlawful governmental acts because appellees point out that plaintiffs in Horne sued by reason of unlawful appropriations (which the supreme court characterized as expenditures) which automatically would have increased the tax burden.
The basic question then again becomes: Did the supreme court in Horne intend to so change Rickman? I think not and think that Horne does not necessarily mean that special injury does not consist of an increased tax burden. One reason is that the foregoing last link in appellees' chain of logic is based not upon language of the supreme court but upon an assumption of appellees. Appellees' argument, however well and convincingly made, that Horne necessarily involved an increased tax burden, fails because there is no indication in Horne that the supreme court was thinking of the case that way. Nor should the supreme court have necessarily done so because there was not shown to be any allegation in that case by plaintiffs of an increased tax burden. In fact, the supreme court in Horne specifically cited and quoted Rickman for the proposition that in order to show special injury of the type defined in Rickman (consisting, as explained above, of an increased tax burden), such injury must be "alleged and proved." 269 So.2d at 662 (emphasis added). Accordingly, a Rickman type of special injury through an alleged increased tax burden was not directly before the court in Horne. Nor was it necessary for the court to even deal in Horne with a sophisticated or detailed analysis of Rickman because the "constitutional violation" principle was found to be an exception to the "special injury" rule, whatever the special injury rule meant.
Just as the majority opinion removes from consideration Glatstein v. City of Miami, 399 So.2d 1005 (Fla. 3d DCA 1981) (involving standing to sue under a fact situation virtually on all fours with the instant case), saying that Glatstein "can only be explained if it be assumed that the standing *1095 question was never raised," I would remove from consideration the assumption from the Horne case relied upon in the excellent brief of Intervenor, Waste Management, Inc., because the matter of an increased tax burden was never raised in Horne.
The majority opinion relies heavily upon Markham as requiring special injury. Markham unquestionably does require special injury and says that plaintiffs did not allege it. ("The complaint for declaratory relief contained no allegation of any special injury... ." 396 So.2d at 1121). Also, the Markham case did not itself define the term "special injury" but did cite Rickman which does define that term. In fact, the only specific definition of "special injury" involving a factual example thereof which I have found in the cited Florida Supreme Court cases is that contained in Rickman, as referred to above ("special injury would result to the complainant as a taxpayer in the increased public burden as the result of an unauthorized act." 74 So. at 207). Under that definition no special injury was alleged in Markham, as distinguished from the instant case, in that no increased tax burden on plaintiff was alleged to result from the unlawful act alleged there, nor could it have been because, as noted further hereinabove, the Markham plaintiff was not found to have been an aggrieved party.
In short, the broad concepts enunciated by the Florida Supreme Court in Horne and Markham are, upon analysis, consistent with Rickman. To apply, or in my view, misapply, the concepts of those cases to the instant case would cause this case to be, in contrast to the many cases cited in the majority opinion, the only Florida case to which our attention has been brought in which standing is denied to a taxpayer shown to have been suing on the basis of an alleged increased tax burden to himself caused by an alleged unlawful contract of a governmental body.

5. The Law In Other Jurisdictions, As Well As The General Perception Of Florida Law, Supports The Standing Of The Taxpayer To Sue.

The holding by the majority also appears to be not only against the weight of the law in other jurisdictions but against what apparently has been generally perceived to be Florida law. See 18 McQuillin, Municipal Corporations, section 52.14 which contains the following observation:
And in many jurisdictions it is now held that it is sufficient that plaintiff taxpayer will be pecuniarily injured by the act notwithstanding other taxpayers will be injured in the same way.
Florida is among the ten jurisdictions cited by McQuillin for that proposition, the specific Florida case citation being the opinion of this court in Hunter v. Carmichael, 133 So.2d 584 (Fla. 2d DCA 1961), which is cited in the majority opinion and which is consistent with this dissenting opinion. In Hunter this court said,
Florida has recognized the right of a citizen and taxpayer to maintain a suit to restrain public officials from paying out public monies upon an allegedly void and unauthorized contract.
133 So.2d at 586. See also 18 McQuillin, Municipal Corporations, section 52.13, where Bryan v. City of Miami, 56 So.2d 924 (Fla. 1951), which itself cites McQuillin, is cited to place Florida among thirty-one jurisdictions in which
[I]t is generally held, unless otherwise provided by statute, that a taxpayer cannot sue to enjoin an illegal or unauthorized act on the part of a municipality unless such act will result in an increase of his taxes or will otherwise result in direct or indirect pecuniary injury to him.
The foregoing quotation seems in substantial accord with the outline, further above in this dissent, of the "true Rickman Rule."

6. Permitting Standing Of the Otherwise Remediless Taxpayer In The Instant Case Would Represent Beneficial Public Policy.

The policy rationale behind the "special injury" requirement, referred to in the carefully written majority opinion of my learned colleagues, as well as in the opinion of the able trial court, was originally expressed *1096 in Paul v. Blake, supra. But that rationale  the discouragement of potentially frivolous lawsuits  seems to be more a basis for justifying denial of standing in all taxpayer suits of this type, as I believe is the operative effect of the majority opinion.
The majority recognizes, through its quotation from Paul, that that rationale is based upon "highly debatable policy choices." I would go a step further and debate it in the context of the instant suit. For example, equally persuasive under the circumstances is the general principle that "for every wrong, there is a remedy." If a reply would be made, as in Paul, that that concept should not be applicable when potential hindrances of the efficient operation of a democratic governmental body are at stake, I would suggest that a democratic governmental body should be able to withstand assault by taxpayers asserting unlawfully increased tax burdens. Such assaults, if restricted to those involving allegations of increased taxes, in contrast to simply abstract allegations of governmental wrongs (which was what was really to be discouraged by the benchmark case of Rickman v. Whitehurst, supra) should not unduly hamper, and should, in fact, strengthen, the democratic process founded upon a government of laws. In fact, the Florida Supreme Court in Horne refused to "deny this right of attack by a responsible taxpayer upon allegedly illegal expenditures ... of public monies, as transcending possible unwarranted litigation that might in some instances ensue." 269 So.2d at 663 (emphasis added).
Certainly there is before us no evidence of proliferation of frivolous suits following the early Florida Supreme Court cases recognized by the majority opinion as upholding the standing of the instant taxpayer-plaintiff to sue. And the Florida Rules of Civil Procedure, e.g., rule 1.150 (as to sham pleadings) and rule 1.150 (as to summary judgments), and Florida Statutes, section 57.105 (as to attorney's fees being awarded to the prevailing party when there is a "complete absence of a justiciable issue of either law or fact raised by the losing party"), provide protection against frivolous suits.
Appellees argue that the instant plaintiff's remedy must lie at the ballot box or with a suit by a public officer. However, first, a ballot box remedy would under the circumstances of this case really be no remedy at all for prior implementation of the allegedly unlawful contract complained of, and, second, to wait for a public officer to sue is not necessarily any remedy at all. Appellees suggest that the Governor, for example, might sue under his general powers. However, whether or not the Governor has the power to sue the City of Tampa in this instance, I am not at all sure that the Governor's office would have the facilities, or should have the responsibility, to oversee or monitor all contracts by governmental bodies in the state in order to be in a position to provide a meaningful remedy. Also, to permit private enforcement of statutory law which is concurrently enforceable by governmental officials may well be good public policy, one notable example of which is private enforcement of federal and state antitrust laws (which also are to foster competition) in recognition of the plain reality that government officials cannot be expected to do everything. As the Florida Supreme Court said in Horne,
If a taxpayer does not launch an assault, it is not likely that there will be an attack from any other source, because the agency involved is usually in accord with the expenditure. There may be instances in which the affected public official might pursue the matter. The Attorney General would be an appropriate officer to bring such a suit, but in some instances this is not done and it is in such cases that it is only the taxpayer's attack which preserves the public treasure.
269 So.2d at 660.
Despite our reluctance to open the door to possible multiple suits by `ordinary citizens,' nonetheless, it is the `ordinary citizen' and taxpayer who is ultimately affected and who is sometimes the only champion of the people in an unpopular cause. We would therefore not deny this *1097 right of attack by a responsible taxpayer upon allegedly illegal expenditures ... of public monies, as transcending possible unwarranted litigation that might in some instances ensue.
269 So.2d at 663.
I anchor this dissenting opinion upon a construction of Florida Supreme Court case law and therefore feel that this dissent is in accordance with the doctrine of stare decisis. Nonetheless, I do not feel it amiss to refer to additional underlying public policy concepts which appear to justify taxpayers' suits in these circumstances.
I have no quarrel with the public policy considerations cited in the majority opinion, as have also been recited in the Paul and Markham cases, relative to discouraging a multiplicity of frivolous lawsuits when no increased tax burden through unlawful expenditures has been alleged. However, I would not view as against public policy the potential of other taxpayer lawsuits under the types of circumstances alleged in this case, even a possibility of a multiplicity of such suits, because, as the Florida Supreme Court said in Horne, oftentimes a taxpayer's suit may be the only source of attack. This would seem especially apposite to suits, as the instant suit, alleging violation of competitive bidding requirements, a subject of recognized, fundamental importance to the operation of democratic governments, Wester v. Belote, 138 So. at 724, and which involves, no less than in Horne, alleged illegal expenditures of public monies. See also Glatstein v. City of Miami, supra.
It might serve, for present purposes, to put the matter into sharper focus upon the fundamental issue of this appeal, i.e., standing to sue, by assuming that the wrong, or unlawful act, of the city alleged herein was to ignore, grossly and patently, the competitive bidding requirements and by assuming that there was no public official willing or able to take action to remedy the wrong.

7. The Merits Of The Suit Should Be Dealt With By The Trial Court

However, I most emphatically do not intend this dissenting opinion as an expression of any sort whatsoever concerning the merits of this case relative to whether or not competitive bidding requirements were violated. I simply think that the effect of the majority opinion in this case would be an at least unfortunate precedent of precluding meritorious taxpayers' suits involving governmental violations of competitive bidding laws. Additionally, I note that the City of Tampa initially in this case was quite willing to deal with the merits and, in fact, was defending on the grounds that the procedures followed were not only lawful but were necessary for the welfare of the public under the special exigencies involved. Intervenor, Waste Management, Inc., raised the standing issue.

8. Conclusion

The order of the trial court now before us is directed solely to the "standing" issue. I would reverse and remand for the expedited non-jury trial to which appellant and appellee city had stipulated before the standing issue was raised.